**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                    MASTER FILE NO. 12-md-02311

_____

In Re: Wire Harness Cases                    HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Direct Purchaser Actions                    2:12-cv-00101
End-Payor Actions                           2:12-cv-00103

_____/

**OPINION AND ORDER DENYING DENSO CORPORATION AND**
**DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO DISMISS**
**THE DIRECT PURCHASERS' CONSOLIDATED AMENDED CLASS**
**ACTION COMPLAINT AND THE END-PAYORS' CORRECTED**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Before the Court is Defendant DENSO's Corporation and DENSO International

America, Inc.'s Motion to Dismiss the Direct Purchasers' Consolidated Amended Class

Action Complaint and the End-Payors' Corrected Consolidated Amended Class Action

Complaint (Case No. 12-02311, Doc. No. 239).  The Court heard oral argument, and at

the conclusion of the hearing took this matter under advisement.  For the reasons that

follow, the motion is **DENIED**.

## I. RELEVANT FACTS

Direct Purchaser Plaintiffs ("DPPs") and End-Payor Plaintiffs ("EPPs") allege DENSO Corporation and DENSO International America, Inc. (collectively "DENSO Defendants") engaged in a horizontal conspiracy to raise and fix prices on Wire Harness Products through bid-rigging and coordinated price adjustments in violation of the Sherman Act, 15 U.S.C. § 1.  (See Doc. Nos. 86 and 174).  In February 2010, the FBI raided DENSO Defendants' U.S. offices, as part of an ongoing antitrust investigation. (Doc. No. 86 at ¶ 116, Doc. No. 174 at ¶ 170).  DENSO Defendants subsequently admitted to violating Section 1 of the Sherman Antitrust Act by rigging bids and fixing prices of electronic control units, which DPPs and EPPs define as included in Wire Harnesses and Related Products. (Doc. No. 86 at ¶ 136).

It is undisputed that DENSO Defendants participated in the criminal conspiracy to rig bids and fix prices and allocate the supply of body electronic control units ("ECUs") and to fix, stabilize and maintain the prices of body electronic control units sold.  They admitted that "high-level personnel participated in a conspiracy with other persons and entities engaged in the manufacture and sale of ECUs (electronic control units)."  (See Doc. No. 382, Ex. B, U.S. v. DENSO Corp., No. 12-20063, Plea Agreement (E.D. Mich. Mar. 5, 2012)).  DENSO Defendants agreed to pay a $78 million criminal fine, which was based in part on the ECU antitrust violation.  DENSO Defendants also admitted to antitrust violations in the related market of heater control panels.

Neither Direct Purchaser Plaintiffs not End-Payor Plaintiffs rely solely on the plea agreement to make their claims.  Their complaints detail international government

investigations that resulted in the guilty pleas of other defendants for their part in the price-fixing and bid-rigging of wire harness products as well as the market conditions that facilitated the conspiracy.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a Section 1 Sherman Act claim. It held that the

complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

## III.  ANALYSIS

Before the Court considers any argument advanced by DENSO Defendants, it notes that the sufficiency of the allegations relative to the challenged complaints was discussed at length in resolving the Collective Defendants' motions to dismiss both the DPPs' complaint and the EPPs' complaint.  Consequently, the Court limits its discussion to the added ground for dismissal put forth by DENSO Defendants in their motion.

According to DENSO Defendants, the claims lodged against them rest entirely on the guilty plea, which involved a single relevant product--body electronic control units--and a single manufacturer.  Yet, the guilty plea provides no basis to link DENSO Defendants to the much broader conspiracy alleged here, involving as many as twelve products.  DENSO Defendants do not manufacture, market, or sell those other products.  Further, the charts illustrating certain Defendants' market shares with respect to the sale of wire harness products do not include DENSO Defendants.  (Doc. No. 86 at ¶ 101, Doc. No. 174 at ¶ 143).  None of the other Defendants who have pleaded guilty have identified DENSO Defendants as co-conspirators.  The complaints simply do

4

not link DENSO to the widespread conspiracy alleged, and dismissal is appropriate. The Court disagrees.

DENSO Defendants' reliance on In re Iowa Ready-Mix Concrete, 786 F. Supp. 2d 975, 979 (N.D. Iowa 2011) (holding that guilty pleas of three individual defendant did not support a conspiracy between eight defendants), to support their position is misplaced.   Unlike the global market at issue here, the relevant market for the price-fixed concrete at issue in In re Iowa Ready-Mix Concrete, was narrowed by qualities of the concrete itself. The pleas limited the conspiracy geographically, a distinction that diminishes the persuasiveness of this case.

Nor is the Court persuaded that dismissal is warranted under In re TFT-LCD (Flat Panel) Antitrust Litig., MDL NO. 1827, 2010 WL 2629728 (N. D. Cal. June 29, 2010).  Even though DENSO Defendants manufactured and sold only one of the products identified as making up a Wire Harness System, is it not saved by the limited product involvement. The plaintiffs in In re TFT-LCD, argued that those defendants that have been investigated for anticompetitive conduct in a different market rendered the plaintiffs' allegations of participating in a global conspiracy in a different specified market more plausible.  Even though DENSO Defendants in fact pleaded guilty to price-fixing heater control panels–a different market, that plea is not needed to establish the viability of the complaints.  As DPPs and EPPs note, Defendant Furukawa Electric Co. Ltd. ("Furukawa") pleaded guilty to rigging bids and fixing prices of automotive wire harnesses and related products, one of which is identified as ECUs.  (Doc. No. 239, Ex. G at ¶¶ 2, 4(a).  Defendant Yazaki Corporation likewise pleaded guilty to participating in a conspiracy with other entities engaged in the manufacture and sale of automotive wire

5

harnesses and related products, which for purposes of the plea agreement, included electronic control units.  (Doc. 239, Ex. H at ¶ 4(a)(i)).  The guilty pleas of other Defendants regarding antitrust conduct involving ECUs undermines DENSO Defendants' argument.

Moreover, DENSO's guilty plea does not dictate the parameters of the antitrust claims alleged by DPPs or EPPs.  See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010).  EPPs allege,

> Automotive Wire Harness Systems comprise the "central nervous system" of an automotive vehicle and consist of the wires or cables and data circuits that run throughout the vehicle. To ensure safety and basic functions (e.g., going, turning, and stopping), as well as to provide comfort and convenience, automobiles are equipped with various electronics that operate using control signals running on electrical power supplied from the battery. The Automotive Wire Harness System is the conduit for the transmission of these signals and electrical power.

(Doc. No. 174 at ¶ 124).  DPPs use the term "Wire Harness Products," to encompass "wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors used in motor vehicles."  (Doc. No. 86 at ¶ 10). In turn, ECUs "are embedded modules or systems that control one or more of the electrical systems or subsystems in a motor vehicle."  (Doc. No. 174 at ¶ 131).  On a motion to dismiss, the Court assesses whether the allegations in the complaints state a claim.  They do.  The allegations mirror the admissions in the guilty pleas.

DENSO Defendants are no better situated for dismissal than other Defendants. The existence of the guilty plea, when viewed in light of the allegations that ECUs are

part of wire harness systems, allegations of market conditions that show a concentration of market shares, high barriers to entry, and the capability of Defendants producing products for use in any vehicle, when combined with opportunities to conspire at auto and industry trade shows satisfy Twombly.  The number of pleas in the same market as alleged in the civil complaints render the conduct alleged plausible. The fact that DENSO Defendants may not have participated in price-fixing of every product identified in the complaints does not warrant dismissal.  It is clear that DENSO Defendants participated in a conspiracy, and the Court cannot allow the guilty plea it entered to immunize it from conduct that falls outside the plea itself.  See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010) (observing that "civil litigation" cannot be "circumscribed or defined by the boundaries of the criminal investigations") (citing In re Vitamins Litig., No. 99-misc-197, 2000 WL 1475705 at *11 (D. D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.").

## IV.  CONCLUSION

For the reasons stated above, DENSO Defendants' motion is **DENIED**.

7

**IT IS SO ORDERED.**


                              s/Marianne O. Battani
                              MARIANNE O. BATTANI
                              UNITED STATES DISTRICT JUDGE

Date:  June 6, 2013


                    CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon
all parties of record via the Court's ECF Filing System.

                              s/Bernadette M. Thebolt
                              Case Manager

8