# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____
|                                        :
**In Re: AUTOMOTIVE PARTS**       :       **Master File No. 12-md-02311**
**ANTITRUST LITIGATION**       :       **Honorable Marianne O. Battani**
_____:
|                                        :
**In Re: WIRE HARNESS CASES**       :
_____:
|                                        :
**THIS DOCUMENT RELATES TO:**       :       **2:12-cv-00101-MOB-MKM**
**ALL DIRECT PURCHASER ACTIONS**   :       **2:14-cv-13773-MOB-MKM**
_____ :

## DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH CHIYODA, FUJIKURA, LEONI, SUMITOMO, AND YAZAKI DEFENDANTS AND PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlements with Defendants Chiyoda Manufacturing Corporation, Fujikura Ltd., Fujikura Automotive America LLC, LEONI Wiring Systems, Inc., Leonische Holding Inc., Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., Sumitomo Wiring Systems (U.S.A.), Inc., Yazaki Corporation, and Yazaki North America, Inc., and the proposed plan for distribution of settlement funds. In support of this motion, Plaintiffs rely upon the accompanying brief, which is incorporated by reference herein.

DATED: June 19, 2017

Respectfully submitted,

 /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

———————————————————— :
**In Re:  AUTOMOTIVE PARTS**          :          **Master File No. 12-md-02311**
**ANTITRUST LITIGATION**              :          **Honorable Marianne O. Battani**
————————————————————:
                                     :
**In Re: WIRE HARNESS CASES**         :
————————————————————:
                                     :
**THIS DOCUMENT RELATES TO:**          :          **2:12-cv-00101-MOB-MKM**
**ALL DIRECT PURCHASER ACTIONS**  :          **2:14-cv-13773-MOB-MKM**
————————————————————  :

**BRIEF IN SUPPORT OF DIRECT PURCHASER**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED**
**SETTLEMENTS WITH CHIYODA, FUJIKURA, LEONI,**
**SUMITOMO, AND YAZAKI DEFENDANTS AND PROPOSED**
**PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

STATEMENT OF ISSUES PRESENTED................................................... ix

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................. x

INTRODUCTION ....................................................................................... 1

I.  BACKGROUND ............................................................................. 2

II.  TERMS OF THE SETTLEMENT AGREEMENTS ...................... 5

III.  THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE
     AND SHOULD BE APPROVED BY THE COURT....................... 8

     A.  The Governing Standards for Final Approval. ..................... 8

     B.  The Proposed Settlements are Fair, Reasonable, and Adequate. ........................... 10

          1.  The Likelihood of Plaintiffs' Success on the Merits Weighed Against the
              Amount and Form of the Relief Offered in the Settlements Supports
              Approval. ............................................................... 11

          2.  The Complexity, Expense, and Likely Duration of Continued Litigation
              Favor Approval. ..................................................... 13

          3.  The Judgment of Experienced Counsel Supports Approval. ................... 14

          4.  The Amount of Discovery Completed Is Sufficient. ............................... 15

          5.  The Reaction of Class Members Supports Approval............................... 15

          6.  The Settlements Are the Product of Arm's-Length Negotiations............. 16

          7.  The Settlements Are Consistent with the Public Interest......................... 16

IV.  NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE
     PROCESS ...................................................................................... 16

V.  THE PROPOSED PLAN FOR DISTRIBUTION OF THE WIRE HARNESS
    SETTLEMENT FUND IS FAIR, REASONABLE AND ADEQUATE AND MERITS
    APPROVAL .................................................................................... 18

i

VI.    CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT
       CLASSES FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS
       IS APPROPRIATE ............................................................................................... 20

       A.    The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a). ............. 21

             1.    The Settlement Classes are Sufficiently Numerous .................................. 22

             2.    There are Common Questions of Law and Fact. ..................................... 22

             3.    Plaintiffs' Claims are Typical of Those of the Settlement Classes........... 24

             4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes.
                   ..................................................................................................... 24

       B.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement
             Purposes. ............................................................................................... 25

             1.    Common Legal and Factual Questions Predominate ................................ 26

             2.    A Class Action is Superior to Other Methods of Adjudication. ............... 27

VII.   CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................... 21, 26, 27

*Automotive Parts Antitrust Litig.,* 12-MD-02311,
  2013 WL 2456584 (E.D. Mich. June 6, 2013)............................................................ 3

*Barry v. Corrigan,*
  79 F. Supp 3d 712 (E.D. Mich. 2015)............................................................... 23, 24

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ............................................................................ 26

*Berry v. Sch. Dist. of City of Benton Harbor,*
  184 F.R.D. 93 (W.D. Mich. 1998) ...................................................................... 11

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79 (1981)....................................................................................... 10

*Date v. Sony Electronics, Inc.,*
  No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)................................... 14, 22, 24

*Davidson v. Henkel Corp.,*
  302 F.R.D. 427 (E.D. Mich. 2014) ..................................................................... 22

*Dick v. Sprint Commc'ns,*
  297 F.R.D. 283 (W.D. Ky. 2014)...................................................................... 7, 9

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
  No. 10-cv-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ....................................... 23

*Ford v. Fed.-Mogul Corp.,*
  No. 2:09-CV-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ................................... 12, 14

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975)............................................................................... 9

*Grenada Invs., Inc. v. DWG Corp.,*
  962 F.2d 1203 (6th Cir.1992) ....................................................................... 11, 16

*Griffin v. Flagstar Bancorp, Inc.,*
  No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .............................. passim

*Hoving v. Lawyers Title Ins. Co.,*
256 F.R.D. 555 (E.D. Mich. 2009) ....................................................... 25

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1996) ............................................................... 23

*In re American Bank Note Holographics, Inc.,*
127 F. Supp. 2d 418 (S.D. N.Y. 2001)................................................... 19

*In re Auto. Refinishing Paint Antitrust Litig.,*
617 F. Supp.2d. 336 (E.D. Pa. 2007) ............................................... 8, 18

*In re Automotive Refinishing Paint Antitrust Litig.,*
MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ................. 9

*In re Cardizem CD Antitrust Litig,*
200 F.R.D. 297 (E.D. Mich. 2007) ...................................................... 27

*In re Cardizem CD Antitrust Litig.,*
200 F.R.D. 326 (E.D. Mich. 2001) ...................................................... 28

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003) ............................................... passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)......................................... 7

*In re Flat Glass Antitrust Litig.,*
191 F.R.D 472 (W.D. Pa. 1999) ........................................................... 23

*In re Flonase Antitrust Litig.,*
284 F.R.D. 207 (E.D. Pa. 2012)........................................................... 28

*In re Flonase Antitrust Litig.,*
291 F.R.D. 93 (E.D. Pa. 2013).............................................................. 18

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y.2004) ........................................................... 15

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
194 F.R.D. 166 (E.D. Pa. 2000)............................................................ 18

*In re Insurance Brokerage Antitrust Litig.,*
297 F.R.D. 136............................................................................................ 17

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 7, 13

*In re NASDAQ Market-Makers Antitrust Litig.,*
    169 F.R.D. 493 (S.D.N.Y 1996) ........................................................................ 28

*In* re Packaged Ice Antitrust Litig.,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................... passim

*In re Polyurethane Foam Antitrust Litig.,*
    No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ........................................ 11

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) ..................................................................... 25, 26

*In re Southeastern Milk Antitrust Litig.,* 2:07- CV-208,
    2013 WL 2155379 (E.D. Tenn. May17, 2013) .......................................................... 8

*In re Southeastern Milk Antitrust Litig.,*
    No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ......................................... 26

*In re Telectronics Pacing Sys. Inc.,*
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................ 10, 15

*In re Vitamins Antitrust Litig.,*
    No. 99-197, 2000 WL 1737867 (D. D.C. March 31, 2000) ................................................ 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013) ................................................................ 21, 22, 23, 24

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* v. *Ford Motor Co.,*
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ......................................... passim

*IUE-CWA v. General Motors Corp.,*
    238 F.R.D. 583 (E.D. Mich. 2006) ................................................................ 9, 12

*Law v. National Collegiate Athletic Ass'n.,*
    108 F.Supp.2d 1193 (D. Kan. 2000) ................................................................... 18

*Lessard v. City of Allen Park,*
    372 F. Supp. 2d 1007 (E.D. Mich. 2005) ............................................................... 9

*Marsden v. Select Medical Corp.,*
    246 F.R.D. 480 (E.D. Pa. 2007) ..................................................................... 22

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006).............................................................................. 9

*Olden v. Gardner*,
   294 Fed. Appx. 210 (6th Cir. 2008)........................................................................ 9

*Packaged Ice*,
   2010 WL 3070161 ................................................................................................. 15

*Packaged Ice*,
   2011 WL 6209188 ................................................................................................. 18

*Paper Systems Inc. v. Mitsubishi Corp.*,
   193 F.R.D. 601 (E.D. Wisc. 2000)......................................................................... 27

*Prandin Direct Purchaser Antitrust Litig.*,
   C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .............. 19

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ................................................................................. 24

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)................................ passim

*Sheick v. Automotive Component Carrier LLC*,
   No. 09–14429, 2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) .............................. 24

*Sims v. Pfizer, Inc.*,
   No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016)......................... 8

*Smith v. MCI Telecoms Corp.*,
   No. Civ. A. 87-2110-EEO, 1993 WL 142006 (D. Kan. April 28, 1993)................... 18

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ...................................................................... 22, 23, 24

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)........................................................................... 10, 18

*In re Telectronics Pacing Sys. Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................... 10, 13, 15

*Thacker v. Chesapeake Appalachia, LLC*,
   259 F.R.D. 262 (E.D. Ky. 2009).......................................................................... 21

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ............................................................... passim

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ................................................................. 10

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    248 F.R.D. 483, 498 (E.D. Mich. 2008) ................................................ 14

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ...................................................... 9, 13, 14

**Statutes**

28 U.S.C. § 1715 ...................................................................................... 5

**Rules**

Fed. R. Civ. P. Rule 23 ................................................................ 1, 18, 20

Fed. R. Civ. P. Rule 23(a) ...................................................... 21, 22, 25

Fed. R. Civ. P. Rule 23(a)(1) .................................................... 22

Fed. R. Civ. P. 23(a)(2) ............................................................ 22, 23

Fed. R. Civ. P. Rule 23(a)(3) .................................................... 24

Fed. R. Civ. P. Rule 23(a)(4) .................................................... 24, 25

Fed. R. Civ. P. Rule 23(b) ........................................................ 21, 25

Fed. R. Civ. P. Rule 23(b)(3) ................................................... passim

Fed. R. Civ. P. 23(c)(2) ............................................................ 17

Fed. R. Civ. P. Rule 23(c)(3) .................................................... 17

Fed. R. Civ. P. Rule 23(e)(1) .................................................... 16, 17

Fed. R. Civ. P. 23(e)(2) ............................................................ 10, 11

Fed. R. Civ. P. Rule 23(g) ........................................................ 25

**Other Authorities**

4 *NEWBERG ON CLASS ACTIONS*, § 18.05 ........................................ 23

4 *NEWBERG ON CLASS ACTIONS,* § 12.35 ......................................................................... 18, 19

## STATEMENT OF ISSUES PRESENTED

1.      Whether the proposed settlements between the Direct Purchaser Plaintiffs and Defendants Chiyoda Manufacturing Corporation ("Chiyoda"); Fujikura Ltd. and Fujikura Automotive America LLC (collectively, "Fujikura"); LEONI Wiring Systems, Inc. and Leonische Holding Inc. (collectively, "LEONI"); Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., and Sumitomo Wiring Systems (U.S.A.), Inc. (collectively, "Sumitomo"); and Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki") (all Defendants referenced in this paragraph collectively, the "Settling Defendants"), as set forth in the Settlement Agreements between the Direct Purchaser Plaintiffs and the respective Settling Defendants, are fair, reasonable and adequate, and whether the Court should approve the settlements under Fed.R.Civ.P. 23.

2.      Whether the Court should certify the Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Settlement Classes under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlements only.

3.      Whether the Court should approve the proposed plan for distribution of settlement funds.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
     June 20, 2016)

*Date v. Sony Electronics, Inc.*,
     No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
     No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
     527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
     722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
     No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
     No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
     133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
     137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiffs, on behalf of Settlement Classes comprised of direct purchasers of Wire Harness Products in the United States, have reached settlements with the Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Defendants.  Under the terms of the proposed settlements, the Settling Defendants will pay a total of $249,151,000[1] and provide cooperation to assist Plaintiffs in the prosecution of their claims against the remaining Defendants.

The Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements were reached after this court gave final approval to a $4,750,000 settlement with Lear Corporation ("Lear") on January 7, 2015 (2:12-cv-00101, Doc. No. 217), and to settlements with the G.S. Electech and Tokai Rika Defendants, totaling $3,900,000, on February 6, 2017 (2:12-cv-00101, Doc. Nos. 401, 402).  When added to the Lear settlement, the G.S. Electech settlement, and the Tokai Rika settlement, the total of all settlements reached in this case is $257,801,000, plus accruing interest (the "Wire Harness Settlement Fund").

In connection with the final approval process for the Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements, Plaintiffs propose to make a distribution to Settlement Class

---

[1] As discussed in Section II of this Brief, and in the Notice (attached as Exhibit 1), some of the settlement amounts are subject to reduction, and/or to rescission, based on valid and timely requests for exclusion by Settlement Class members.  The specific terms applicable to each of these settlements are set forth in confidential letter agreements between these Defendants and the Settlement Classes that are available to the Court for *in camera* review upon its request.  The presence of any rescission provision, and the maximum amount of any Settlement Amount reduction, are disclosed in the Notice.  The final settlement amounts will be determined at the end of the period to request exclusion from the Settlement Classes.  After that date, and prior to the final fairness hearing, Settlement Class Counsel will file with the Court a report on opt-outs, and reductions to the settlement amounts, if any.

1

members, subject to Court approval, from the Wire Harness Settlement Fund, and will apply to the Court for an award of attorneys' fees and expenses.[2]

For the reasons set forth herein, Direct Purchaser Plaintiffs respectfully submit that the proposed settlements are fair, reasonable and adequate, and should be approved by the Court. Settlement Class Counsel also request that the Court approve the proposed plan for distribution of the settlement proceeds to Settlement Class members. Submitted herewith are proposed Orders and Final Judgments agreed to by Direct Purchaser Plaintiffs and the Settling Defendants, and a proposed order granting the proposed distribution plan.

## I.    BACKGROUND

Beginning in 2011, class action lawsuits were filed against Defendants by Plaintiffs on behalf of direct purchasers of "Wire Harness Products."[3]   On March 19, 2012, the Court appointed the undersigned law firms Interim Co-Lead Counsel and Liaison Counsel for the Direct Purchaser Plaintiffs.  (2:12-md-02311, Doc. No. 60).  In Case Management Order 1, the Court ordered consolidation of the Direct Purchaser Actions and directed the Direct Purchaser Plaintiffs to file a consolidated amended complaint.  (2:12-md-02311, Doc. No. 73).

On May 14, 2012, the Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint (2:12-md-02311, Doc. No. 86), alleging that Defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig

---

[2] A separate motion for an award of attorneys' fees and litigation costs and expenses, and incentive awards for the Class Representatives, is being filed today with the Court.

[3] "Wire harnesses" are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles.  "Wire Harness Products," for purposes of the proposed settlement, are wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws.   Direct Purchaser Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Wire Harness Products were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct. Direct Purchaser Plaintiffs seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Defendants filed multiple motions to dismiss the Consolidated Amended Class Action Complaint, including a collective Rule 12(b)(6) motion, on July 13, 2012.  (Case No. 2:12-md-02311, Doc. No. 228).   The Court denied these motions on June 6, 2013.   *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013).

Direct Purchaser Plaintiffs filed a Second Consolidated Amended Class Action Complaint on June 20, 2013 (2:12-cv-00101, Doc. No. 103), and a Third Consolidated Amended Class Action Complaint (2:12-cv-00101, Doc. No. 260) (the "Complaint"), on August 25, 2014. Direct Purchaser Plaintiffs filed a separate Class Action Complaint, against LEONI, on September 30, 2014.  (2:14-cv-13773, Doc. No. 1).

Direct Purchaser Plaintiffs reached a settlement with Lear on May 5, 2014.  (2:12-cv-00101, Doc. No. 156-2).  On July 9, 2014, this Court preliminarily approved the Lear settlement and authorized dissemination of notice to the Settlement Class.  (2:12-cv-00101, Doc. No. 162). Notice was disseminated to Settlement Class members in accordance with the terms of the Court's Order and, following a hearing on December 3, 2014, the Court granted final approval to the Lear settlement by Order dated January 7, 2015 (2:12-cv-00101, Doc. No. 217).

On April 26, 2016 and July 4, 2016, respectively, Plaintiffs entered into a $3,100,000 settlement with G.S. Electech and an $800,000 settlement with Tokai Rika. On October 21,

2016, the Court preliminarily approved those settlements and authorized dissemination of notice to the Settlement Classes. (2:12-cv-00101, Doc. Nos. 319, 320).  Notice was disseminated and a hearing was held on January 25, 2017.  The Court granted final approval to the G.S. Electech and Tokai Rika settlements by Orders dated February 6, 2017. (2:12-cv-00101, Doc. Nos. 401, 402).

Plaintiffs have also reached settlements with Chiyoda ($1,150,000), Fujikura ($9,500,000), LEONI ($1,000,000), Sumitomo ($25,421,000), and Yazaki ($212,080,000) totaling $249,151,000.  (2:12-cv-00101, Doc. Nos. 393-2 (Chiyoda), 325-1 (Fujikura), 450-1 (Leoni), 381-1 (Sumitomo), and 393-1 (Yazaki)).  The Court has preliminarily approved and has provisionally certified Settlement Classes with respect to each of these settlements.[4]

By Order dated May 5, 2017, the Court authorized dissemination of notice of the proposed settlements and related matters to the members of the Settlement Classes. (2:12-cv-00101, Doc. No. 474) (the "Notice Dissemination Order").

Pursuant to the Notice Dissemination Order, on May 19, 2017, 7,472 copies of the Notice of Proposed Settlements of Direct Purchaser Class Action with Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Defendants and Hearing on Settlement Approval and Related Matters, and Claim Form (the "Notice") were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  Further, a Summary Notice of Proposed Settlements of Direct Purchaser Class Action with Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Defendants and Hearing on Settlement Approval and Related Matters (the "Summary Notice") was published in *Automotive News* on May 29, 2017, and in the national edition of *The Wall*

---

[4] Chiyoda (2:12-cv-00101, Doc. No. 432), Fujikura (2:12-cv-00101, Doc. No. 377), LEONI (2:12-cv-00101, Doc. No. 466), Sumitomo (2:12-cv-00101, Doc. No. 433), and Yazaki (2:12-cv-00101, Doc. No. 431).  As noted in footnote 1, certain of the settlement amounts are subject to reduction, and/or to rescission, based on valid and timely requests for exclusion by Settlement Class members.

*Street Journal,* on May 30, 2017. In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[5]

The deadline for submission of objections to the proposed settlements, and for requests for exclusion from the Settlement Classes, is July 7, 2017.

## II.    TERMS OF THE SETTLEMENT AGREEMENTS

Plaintiffs, on behalf of the Fujikura Settlement Class, have entered into a settlement with Fujikura dated October 26, 2016 under which Fujikura has agreed to pay $9,500,000. The Settlement Agreement gives Fujikura the right to reduce the amount of the settlement by as much as, but no more than, $95,000, and to withdraw from the settlement, in the event of valid and timely requests for exclusion by members of the Fujikura Settlement Class. Fujikura has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

Plaintiffs, on behalf of the Sumitomo Settlement Class, have entered into a settlement with Sumitomo dated December 13, 2016, under which Sumitomo has agreed to pay $25,421,000. The Settlement Agreement gives Sumitomo the right to withdraw from the settlement in the event of valid and timely requests for exclusion by members of the Sumitomo Settlement Class. Sumitomo has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

---

[5] Counsel for each of the Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Defendants have informed Settlement Class Counsel that their clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005") ("CAFA"), by disseminating the requisite CAFA notice to the appropriate federal and state officials on the following dates: Chiyoda – March 10, 2017; Fujikura – November 18, 2016; LEONI - March 29, 2017; Sumitomo – January 10, 2017 and April 25, 2017; and Yazaki – January 25, 2017.

Plaintiffs, on behalf of the Yazaki Settlement Class, have entered into a settlement with Yazaki dated December 27, 2016, under which Yazaki has agreed to pay $212,080,000. The Settlement Agreement gives Yazaki the right to reduce the amount of the settlement, but under no circumstances to an amount less than $45,000,000, in the event of valid and timely requests for exclusion by members of the Yazaki Settlement Class. Yazaki has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

Plaintiffs, on behalf of the Chiyoda Settlement Class, have entered into a settlement with Chiyoda dated January 4, 2017, under which Chiyoda has agreed to pay $1,150,000, and to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

Plaintiffs, on behalf of the LEONI Settlement Class, have entered into a settlement with LEONI dated February 28, 2017, under which LEONI has agreed to pay $1,000,000. LEONI has the right to terminate the Settlement Agreement if a certain percentage of Settlement Class members opt out of the settlement. LEONI has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

The nature and extent of the cooperation agreed to by each of the Settling Defendants is described in detail in their respective Settlement Agreements. Copies of the Agreements are on file with the Clerk of Court and available on-line at www.autopartsantitrustlitigation.com. Each Settling Defendant has agreed to provide some or all of the following cooperation: (a) the production of documents and data potentially relevant to Direct Purchaser Plaintiffs' claims; (b) assistance in understanding information produced to Direct Purchaser Plaintiffs and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and the Settling Defendants' attorneys who will provide proffers of information relevant to the claims in this litigation; (d) witness interviews; (e) depositions; (f) declarations or affidavits; and (g) trial

testimony.  As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement."  This cooperation will enhance and strengthen Direct Purchaser Plaintiffs' prosecution of their claims against the remaining Defendants.

In exchange for the settlement payments and cooperation, the proposed settlements provide, *inter alia,* for the release by Direct Purchaser Plaintiffs, and the other members of the Settlement Class, of "Released Claims" against Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki, and other "Releasees" (as defined in the Settlement Agreements).  The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint.  The releases specifically exclude certain claims against Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki, including: claims based upon indirect purchases of Wire Harness Products; claims based on negligence, personal injury, or product defects; claims relating to purchases of Wire Harness Products outside the United States; and claims concerning any automotive part other than Wire Harness Products.

Moreover, Chiyoda's, Fujikura's, LEONI's, Sumitomo's, and Yazaki's sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court.  *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL

3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp.2d. 336, 341 (E.D. Pa. 2007).

The Settlement Agreements were consummated only after extensive arms-length negotiations between experienced and sophisticated counsel, which took place over extended periods of time.  During the negotiations, the merits of the respective parties' positions were thoroughly discussed and evaluated.  The parties had the benefit of substantial discovery, including the production and review of documents, written discovery, and depositions.  The proposed settlements are thus based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

In sum, the settlements with Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki are the result of extensive good faith negotiations, after factual investigation, extensive discovery, and legal analysis, by experienced counsel.  Accordingly, Plaintiffs believe that the proposed settlements are fair, reasonable and adequate to the Settlement Classes.

## III.   THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits."  *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013).  *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).

8

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *accord In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). In light of the uncertainties and risks inherent in

any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

Because the proposed Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements were negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and are fair, reasonable, and adequate, Direct Purchaser Plaintiffs respectfully submit that they each merit final approval.

**B.    The Proposed Settlements are Fair, Reasonable, and Adequate.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (citing *Manual (Third)* §30.42). This is

particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998).

Courts in the Sixth Circuit have identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10; *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin*, 2013 WL 6511860, at *3; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015).   No single factor is dispositive.  When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Grenada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors).  As discussed more fully below, the Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements are fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

> **1.    The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlements Supports Approval.**

Courts should assess the fairness of a class action settlement "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010

WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631.  In assessing the parties' dispute and weighing the likelihood of plaintiffs' success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued.  *Sheick,* 2010 WL 4136958, at *16 (citing *IUE–CWA*, 238 F.R.D. at 595).

The settlements provide an excellent result for the Settlement Classes in light of the substantial risks of continuing litigation.  In negotiating the settlements, Settlement Class Counsel took into account the evidence supporting Direct Purchaser Plaintiffs' claims, the dollar volume of the particular settling Defendant's Wire Harness Products sales, the extent of individual settlements between a Settling Defendant and a Class member, the defenses that the Settling Defendants raised or were expected to raise, and the substantial value provided by the Settling Defendants' agreements to cooperate with Direct Purchaser Plaintiffs in the continued prosecution of their claims against the remaining Defendants.

Plaintiffs are optimistic about the likelihood of ultimate success in this matter, but success is not certain.  As this Court has observed, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, which is not required to prove class-wide impact or damages, undertakings that require complex, risky and expensive expert analyses. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

Each of the Settling Defendants is represented by experienced and competent counsel. Each of them has denied Plaintiffs' allegations of liability and damages and asserted a number of defenses, and Plaintiffs believe that they were prepared to defend this case through trial and appeal, if necessary.  Risk is inherent in any litigation, and this is particularly true with respect to class actions.  So, while they are optimistic about the outcome of this litigation, Plaintiffs must acknowledge the risk that some or all of the Settling Defendants could prevail with respect to certain legal or factual issues, which could reduce or even eliminate any potential recovery.

These risks must be weighed against the settlement consideration: cash payments by Chiyoda ($1,150,000), Fujikura ($9,500,000), LEONI ($1,000,000), Sumitomo ($25,421,000), and Yazaki ($212,080,000) totaling $249,151,000, together with cooperation by each of the Settling Defendants, which is valuable to the Settlement Class members as they continue to litigate against the remaining Defendants.  *See Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 12 ("cooperation strongly militates toward approval" of the settlements) (quoting *Linerboard*, 292 F. Supp. 2d 643).  Settlement Class Counsel believe that the settlements are an excellent result.  Weighing the settlements' benefits against the risks of continued litigation tilts the scale toward approval.  *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'"  *Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich*, 720 F.2d at 922.  "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."  *Id.* at 523.  This is particularly true for class actions, which are "inherently complex."  *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

13

Because Plaintiffs are still litigating with the remaining Defendants, it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation, as the remaining Defendants could then use any that analysis against Plaintiffs going forward. Settlement Class Counsel believe it is sufficient to state that complex antitrust litigation of this scope has inherent risks that the settlement at least partially negates.

The proposed settlements eliminate the risks, expense, and delay that would otherwise exist with respect to a recovery from Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki; ensures substantial payments to the Settlement Classes; and provide the Settlement Classes with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports final approval of the proposed settlements.

### 3. The Judgment of Experienced Counsel Supports Approval.

In deciding whether to approve a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23.

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the Direct Purchaser Plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated these settlements at arm's

14

length with well-respected and experienced counsel for the Settling Defendants.  Settlement Class Counsel believe the proposed settlements are an excellent result.

### 4.     The Amount of Discovery Completed Is Sufficient.

Substantial discovery has been completed in this litigation, including the production and review of millions of pages of documents, written discovery, proffers of information, interviews, and numerous depositions.  Information about the alleged Wire Harness Products conspiracy also was obtained as a result of the related criminal litigation, and through Settlement Class Counsel's investigation and the analysis of transactional data by Plaintiffs' experts.[6]  The information from these sources allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation.  Based on this information, Settlement Class Counsel believe that the proposed settlements with Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki are fair, reasonable, and in the best interests of the Settlement Classes, and their opinion supports final approval.

### 5.     The Reaction of Class Members Supports Approval.

The Court cannot yet assess this factor.  But even if there were to be some objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018.  A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members." *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527.  Settlement Class Counsel will submit to the Court an updated report on objections or opt-outs, if any, after the July 7, 2017 deadlines, and prior to the Fairness Hearing scheduled for August 8, 2017.

---

[6] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).

**6.      The Settlements Are the Product of Arm's-Length Negotiations**

Unless rebutted by evidence to the contrary, there is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20.  Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at all times at arm's length with counsel for each of the Settling Defendants.  This factor fully supports approval of the settlements.

**7.      The Settlements Are Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205).  *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlements.  *Griffin*, 2013 WL 6511860, at *5.  This factor also supports approval.

Consideration of the above factors supports final approval of the proposed Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements.  Settlement Class Counsel respectfully submit that the proposed settlements are in the best interests of the Settlement Class and should be approved.

## IV.  NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.  Rule

23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3).  *Id.*

The notice program and forms of notice utilized by Plaintiffs satisfy these requirements. The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also describes the proposed plan of distribution of settlement funds[7] and apprises Settlement Class members that Settlement Class Counsel will seek an award of attorneys' fees and litigation expenses, and incentive awards for the Class Representatives, and that Plaintiffs will seek permission from the Court to use a portion of the settlement funds to pay litigation expenses.

Pursuant to the Preliminary Approval Order, on May 19, 2017, 7,472 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  The Summary Notice was published in *Automotive News* on May 29, 2017, and in

---

[7] A Proof of Claim Form was sent to Settlement Class members along with the Notice.

the national edition of *The Wall Street Journal,* on May 29, 2017.  In addition, a copy of the

Notice was posted on-line at www.autopartsantitrustlitigation.com.[8]

Plaintiffs believe that the content and proposed method for dissemination of notice fulfill

the requirements of Federal Rule of Civil Procedure 23 and due process.  *See Packaged Ice*, 2011

WL 717519, at *5.  Accordingly, approval of the notice program is appropriate.

## V.   THE PROPOSED PLAN FOR DISTRIBUTION OF THE WIRE HARNESS SETTLEMENT FUND IS FAIR, REASONABLE AND ADEQUATE AND MERITS APPROVAL

Approval of a settlement fund distribution in a class action is governed by the same

standards of review applicable to approval of the settlement as a whole: the plan of distribution

must be fair, reasonable and adequate.  *Packaged Ice*, 2011 WL 6209188, at *15.  *Accord*

*Sullivan v. DB Investments, Inc*., 667 F.3d 273, 326 (3d Cir. 2011); *In re Flonase Antitrust Litig.*,

291 F.R.D. 93, 107 (E.D. Pa. 2013); *Law v. National Collegiate Athletic Ass'n.,* 108 F.Supp.2d

1193, 1196 (D. Kan. 2000); *Automotive Refinishing Paint*, 617 F.Supp.2d at 345.  As a general

rule, a plan of allocation that reimburses class members based on the type and extent of their

injuries is a reasonable one.  *In re Ikon Office Solutions, Inc.,* Sec. Litig., 194 F.R.D. 166, 184

(E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at

*2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*,

§12.35, at 350 (4th Ed. 2002) ("*Newberg*") (noting that pro-rata allocation of a settlement fund

"is the most common type of apportionment of lump sum settlement proceeds for a class of

purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in

many antitrust class actions").  An allocation formula need only have a reasonable, rational basis,

---

[8] Consistent with paragraph 15 of the Notice Dissemination Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Preliminary Approval Orders will be filed at least 10 days prior to the Fairness Hearing.

particularly if recommended by experienced and competent class counsel.  As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.  *In re American Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, 429-30 (S.D. N.Y. 2001).

The Notice sent to potential Settlement Class members on May 19, 2017 describes the plan recommended by Settlement Class Counsel for the distribution of settlement funds to Settlement Class members who file timely and proper claim forms.  The proposed distribution plan provides for Wire Harness Settlement Fund (which is composed of proceeds of the Chiyoda, Fujikura, G.S. Electech, Lear, LEONI, Sumitomo, Tokai Rika, and Yazaki settlements, with accrued interest), to be allocated among approved claimants according to the amount of their recognized transactions during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses, and incentive awards for the Class Representatives.  (Notice, Exhibit 1 at 5.)

This Court, and numerous others, have approved similar pro-rata distribution plans. *Occupant Safety Systems* (2:12-cv-00601, Doc. No. 129).  *See* 4 *Newberg*, §12.35, at 353-54 (noting propriety of pro-rata distribution of settlement funds).  "Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."  *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1737867, at *6 (D. D.C. March 31, 2000) (finding proposed plan for pro-rata distribution of partial settlement funds was fair, adequate and reasonable).  *Accord Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) (approving a plan as fair, reasonable and adequate that utilized a pro-

rata method for calculating each class member's share of the settlement fund). The proposed

plan for allocation and distribution satisfies the above criteria and should receive final approval.

## VI.   CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASSES FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS IS APPROPRIATE

In the Preliminary Approval Orders, the Court found that Rule 23's requirements were

met and provisionally certified, for purposes of the proposed settlements only, the following

Settlement Classes:[9]

The Chiyoda Settlement Class is defined as follows:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, and affiliates) that purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through May 5, 2014.

The Fujikura Settlement Class is defined as follows:

> All individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through May 5, 2014 (the "Class Period"). Excluded from the Settlement Class is any potential Settlement Class Member that commenced an action against Fujikura prior to the Execution Date that was included in the MDL Litigation, and that alleged injuries resulting from direct purchases of Wire Harness Products from any Defendant during the Class Period. Also excluded from the Settlement Class is any Defendant and its present and former parents, subsidiaries, and affiliates.

---

[9] For purposes of the Settlement Class definitions, the Defendants are: Chiyoda Manufacturing Corporation; Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; G.S.W. Manufacturing, Inc.; Lear Corporation; Leoni Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.), Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

The LEONI Settlement Class is defined as follows:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, and affiliates) who purchased Wire Harness Products in the United States directly from one or more Defendants from January 1, 2000 through December 13, 2016.

The Sumitomo Settlement Class is defined as follows:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, and affiliates) that purchased Wire Harness Products in the United States directly from one or more Defendants, any current or former subsidiary of any Defendant, or any alleged co-conspirators of the Defendants from January 1, 2000 through December 13, 2016.

The Yazaki Settlement Class is defined as follows:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, and affiliates) that purchased Wire Harness Products in the United States directly from one or more Defendants or co-conspirators from January 1, 2000 through December 13, 2016.

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24; *Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[10]  As demonstrated below, the Settlement Classes meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.      The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.*

---

[10] Each of the proposed Preliminary Approval Orders (*see* footnote 4, *supra*) provides that provisional certification of the Settlement Class will be without prejudice to the rights of any defendants to contest certification of any other class proposed in these coordinated actions.  *See Packaged Ice*, 2011 WL 717519, at *7.

*Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.    The Settlement Classes are Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  *See also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting it is generally accepted that class of 40 or members is sufficient to satisfy the numerosity requirement).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 7,400 entities, geographically dispersed throughout the United States, that have been identified by Defendants as potential direct purchasers of Wire Harness Products.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.    There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common

question to certify a class," *Whirlpool*, 722 F.3d at 853, if "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp 3d 712,731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an agreement to artificially fix prices of Wire Harness Products is a factual question common to all members of the Settlement Classes because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.      Plaintiffs' Claims are Typical of Those of the Settlement Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other Settlement Class members: the Defendants' alleged violations of the antitrust laws. Plaintiffs and the Settlement Classes are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 02, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representatives of the Settlement Classes - Paesano Connecting Systems, Inc., Craft-Co Enterprises, Inc., Findlay

24

Industries, Inc., Cesar-Scott, Inc., Martinez Manufacturing, Inc., South Star Corporation, and ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC - are the same as those of other Settlement Class members. Plaintiffs are direct purchasers of Wire Harness Products from a Defendant in the United States. Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws. Plaintiffs' interests are thus aligned with those of the Settlement Classes.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[11] Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Classes in the settlement negotiations with each of the Settling Defendants, and have vigorously prosecuted this action. Rule 23(a)(4)'s adequacy requirement is therefore satisfied.

### B. Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, each of the Settlement Classes qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.,* 256 F.R.D. 555, 566 (E.D. Mich. 2009).

---

[11] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases. For the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

### 1.    Common Legal and Factual Questions Predominate

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623.   The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).   Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'….   Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied."   527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Classes.   As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Wire Harness Products is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects.   *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6.   If Plaintiffs and the other members of the Settlement

Classes were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.    A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Wire Harness Products litigation has been centralized in this Court.  If a Settlement Class member wants to control its own litigation, it can request exclusion from any or all of the Settlement Classes.  Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case, because the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Classes are not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues,

27

which will bring about a single outcome that is binding on all members of the Settlement Classes. *E.g., In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 326, 351 (E.D. Mich. 2001) ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury"). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the settlements, certify the Settlement Classes for purposes of the settlements only, and approve the proposed plan of distribution.


 DATED: June 19, 2017                                  Respectfully submitted,


                                                          /s/David H. Fink
                                                         David H. Fink (P28235)
                                                         Darryl Bressack (P67820)
                                                         FINK + ASSOCIATES LAW
                                                         38500 Woodward Ave, Suite 350
                                                         Bloomfield Hills, MI 48304
                                                         (248) 971-2500

                                                         *Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2017, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
 nfink@finkandassociateslaw.com

30