# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| _____ | : | |
| **In Re:  AUTOMOTIVE PARTS** | : | **12-md-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| _____ | : | |
| | : | |
| **In Re: WIRE HARNESS CASES** | : | |
| | : | |
| _____ | : | |
| | : | |
| **THIS RELATES TO:** | : | **2:12-cv-00101-MOB-MKM** |
| **ALL DIRECT PURCHASER ACTIONS** | : | |
| _____ | : | |

**DECLARATION OF RYAN KAO RE DISSEMINATION OF
NOTICE OF PROPOSED SETTLEMENTS WITH THE
<u>FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS</u>**

I, Ryan Kao, hereby declare as follows:

1.      I am a Senior Project Manager for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Settlement Administrator in the above-captioned case.  I am familiar with the actions taken by Epiq with respect to the proposed settlements reached in this case between the Direct Purchaser Plaintiffs and the Furukawa and Mitsubishi Electric Defendants as well as the corresponding Class Notice program.  This declaration is based upon my personal knowledge and information provided by Defendants' counsel, Plaintiffs' counsel, and employees and staff under my supervision and is accurate and truthful to the best of my knowledge.

2.      Epiq was established in 1968 as a client services and data processing company. Epiq has been administering bankruptcies since 1985 and settlements since 1993, including settlements of class actions, mass tort litigations, Securities and Exchange Commission enforcement actions, Federal Trade Commission disgorgement actions, insurance disputes, bankruptcies, and other major litigation.

3.      Epiq has administered more than 1,000 settlements, including some of the largest and most complex cases ever settled. Epiq's class action case administration services include: coordination of all notice requirements; design of direct-mail notices; establishment and implementation of notice fulfillment services; coordination with the United States Postal Service ("USPS"); notice website development and maintenance; dedicated telephone lines with recorded information and/or telephone agents; receipt and processing of opt-outs; claims database management; claim adjudication; funds management; and award calculations and distribution services. Epiq works with the settling parties, the Court, and the Class Members in a neutral facilitation role to implement settlement administration services based on the negotiated terms of a settlement.

## OVERVIEW OF EPIQ'S RESPONSIBILITIES AS THE SETTLEMENT ADMINISTRATOR

4.      Epiq's responsibilities included the following:

a.  Printing the Court-approved Direct Purchaser Class Notice and Claim Form ("Claim Package") to be sent to putative Class Members;

b.  Searching the National Change of Address ("NCOA") database for updated addresses, if any, for putative Class Members;

c.  Mailing the Claim Package by USPS First-class mail to putative Class Members;

d.  Causing the Summary Publication Notice to be placed in one edition of *Automotive News* and in the national edition of *The Wall Street Journal*;

e.  Maintaining a toll-free telephone number with customer service telephone agents and an option to request a call back if reached during non-business hours; and

f.  Maintaining an informational website that provides the public access to pertinent documents and settlement information.

DECLARATION OF RYAN KAO RE DISSEMINATION OF NOTICE OF PROPOSED SETTLEMENT WITH
FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS

## CLASS NOTICE

5.      In preparation for mailing the Claim Package, Epiq received lists of potential Settlement Class members from Settlement Class Counsel.  Epiq then submitted the names and addresses of those potential Class Members to cross-reference with the NCOA database for updated address information.  By eliminating duplicate records and invalid mailing addresses, Epiq refined the database to include 7,475 names and addresses of potential Class Members.

6.      On August 16, 2018, Epiq mailed the Claim Package by first class mail, postage prepaid, to the 7,475 potential Class Members.  A copy of the Claim Package is attached hereto as Exhibit A.

7.      As of October 25, 2018, Epiq has received a total of 504 Claim Packages returned by the U.S. Postal Service as undeliverable and has remailed 165 Claim Packages to those records.  As of October 25, 2018, there are 339 records that remain undeliverable.

## PUBLICATION NOTICE

8.      Epiq caused the publication of the Summary Publication Notice in one edition of *Automotive News* on August 27, 2018, and in the national edition of *The Wall Street Journal,* on August 27, 2018.  Confirmation of the publication and copies of the Summary Publication Notice as it appeared in *Automotive News* and *The Wall Street Journal* are attached hereto as Exhibit B.

## SETTLEMENT WEBSITE

9.      On August 16, 2018, Epiq updated portions of the public settlement website to provide Direct Purchase Class Members with information related to the proposed settlements.  The domain name for the website is www.AutoPartsAntitrustLitigation.com/wh.  The website provides general case information and links to important documents, including the Settlement Agreements, the Claim Package, and other documents related to the settlements.

10. As of October 25, 2018, there have been 1,491 page views and 270 unique visitors to the settlement website.

## **REQUESTS FOR EXCLUSION**

11. Class Members could request exclusion from the Settlement Classes, so long as they did so by submitting a request in writing that was postmarked by October 5, 2018. As of October 25, 2018, Epiq has received four (4) requests for exclusion from the Furukawa Settlement Class and six (6) requests for exclusion from the Mitsubishi Electric Settlement Class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 26th day of October, 2018 in New York, New York.

Ryan Kao
Senior Project Manager, Client Services | Epiq

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **Case No. 12-md-02311**<br>**Honorable Marianne O. Battani** |
| **In Re: WIRE HARNESS CASES** | |
| **THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS** | **2:12-cv-00101-MOB-MKM** |

<u>**NOTICE AND CLAIM FORM**</u>

**NOTICE OF PROPOSED SETTLEMENTS OF DIRECT PURCHASER CLASS ACTION WITH FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS AND HEARING ON:**

    **(1)    APPROVAL OF PROPOSED SETTLEMENTS;**

    **(2)    PLAN OF DISTRIBUTION OF THE FURUKAWA AND MITSBUSHI ELECTRIC SETTLEMENT FUND; AND**

    **(3)    MOTION OF SETTLEMENT CLASS COUNSEL FOR ATTORNEYS' FEES AND COSTS AND EXPENSES.**

TO:    ALL PERSONS AND ENTITIES WHO PURCHASED WIRE HARNESS PRODUCTS IN THE UNITED STATES DIRECTLY FROM A DEFENDANT AND/OR ANY CURRENT OR FORMER SUBSIDIARY, JOINT VENTURE, OR AFFILIATE OF ANY DEFENDANT DURING THE PERIOD FROM JANUARY 1, 2000 THROUGH DECEMBER 13, 2016.

    PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR LEGAL RIGHTS MAY BE AFFECTED BY LITIGATION NOW PENDING IN THIS COURT.

---

### WHAT IS THE PURPOSE OF THIS NOTICE AND WHY WAS IT SENT TO ME?

    This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of Michigan, Southern Division (the "Court"). The purpose of this Notice is to inform you of a hearing before the Court to consider:

    (1)    Proposed settlements with Defendants Furukawa Electric Co., Ltd. and American Furukawa, Inc. (together, "Furukawa"), and Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "Mitsubishi Electric") (all defendants referenced in this paragraph collectively, the "Settling Defendants").

    (2)    A plan for distributing the proceeds of the Furukawa and Mitsubishi Electric settlements to Settlement Class members, and a proposed Claim Form that you must submit in order to share in the Furukawa and Mitsubishi Electric Settlement Fund (unless you submitted one in connection with the previously approved settlements in this case); and

    (3)    Settlement Class Counsel's motion for an award of attorneys' fees and reimbursement of their litigation costs and expenses.

This Notice provides information concerning the proposed Furukawa and Mitsubishi Electric settlements, the proposed plan of distribution, and the motion for an award of attorneys' fees and litigation costs and expenses. The Notice also advises you of your rights to: participate in the settlement claims process; exclude yourself from either or both of the Settlement Classes; and object to the terms of the proposed settlements, the plan of distribution, and/or the motion for an award of fees and expenses in connection with the Court hearing on these matters.

## BACKGROUND

You were previously notified of the existence of this class action, the nature of the Plaintiffs' claims, and settlements in this litigation with the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo and Yazaki Defendants totaling $102,736,240.10. The Court has granted final approval to each of those settlements and has approved Plaintiffs' proposed plan for distribution of the net settlement proceeds attributable to those settlements.

Plaintiffs have now reached settlements with Furukawa ($19,000,000) and Mitsubishi Electric ($680,320) totaling $19,680,320 (combined, the "Furukawa and Mitsubishi Electric Settlement Fund"). The Court has preliminarily approved these settlements and has provisionally certified Settlement Classes with respect to each of them. When the Furukawa and Mitsubishi Electric Settlement Fund is added to the amounts of the eight previously approved settlements, the total of all settlements reached in this case is $122,416,560.10, plus accruing interest. As discussed below, the Furukawa Settlement Agreement is subject to rescission based upon valid and timely requests for exclusion by Furukawa Settlement Class members.

This case is part of coordinated legal proceedings involving a number of parts used in motor vehicles. This case and the proposed settlements, however, relate solely to Wire Harness Products purchased **directly** from a Defendant and/or any current or former subsidiary, joint venture, or affiliate of any Defendant. These proceedings do not relate to, and have no effect upon, cases involving any other product or purchaser.

Wire Harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles. "Wire Harness Products," for purposes of each of the proposed settlements, means Wire Harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

If you purchased one or more Wire Harness Products in the United States directly from any of the Defendants identified below and/or any current or former subsidiary, joint venture, or affiliate of any Defendant during the period from January 1, 2000 through December 13, 2016 (the "Class Period"), you may be a member of either or both of the Furukawa and Mitsubishi Electric Settlement Classes, and have the rights and options summarized here:

- You may remain in either or both of the Furukawa and/or Mitsubishi Electric Settlement Classes and be eligible to share in the proceeds of, and be bound by the terms of, those settlements in which you elect to remain;

- You may exclude yourself from either or both of the Furukawa and/or Mitsubishi Electric Settlement Classes, in which case you will **not** be bound by any settlement from which you exclude yourself and will **not** be eligible to share in the proceeds of that settlement;

- If you remain in either of the Furukawa or Mitsubishi Electric Settlement Classes, you may object in writing to that proposed settlement and appear at the hearing (personally or through your own counsel (at your own expense)) where the Court will consider whether the proposed settlements should be approved as fair, adequate, and reasonable;

- If you remain in either of the Furukawa or Mitsubishi Electric Settlement Classes, you may object in writing to the proposed plan of distribution and/or to Settlement Class Counsel's motion for attorneys' fees and reimbursement of litigation costs and expenses, and you may appear at the hearing where the Court will consider these matters;

- You may enter an appearance in the litigation through your own counsel at your own expense; and

- Any Settlement Class member who wishes to participate in the distribution of the Furukawa and Mitsubishi Electric Settlement Fund may either rely on a valid Claim Form that it previously submitted in connection with the previously approved settlements or may instead submit a Claim Form that would relate only to the Furukawa and Mitsubishi Electric settlements. Any Settlement Class member that chooses the latter option must complete and submit a copy of the Claim Form included with this Notice, **postmarked no later than November 14, 2018**.

## WHO IS IN THE SETTLEMENT CLASSES?

The Court has provisionally certified Direct Purchaser Furukawa and Mitsubishi Electric Settlement Classes for purposes of disseminating notice of the proposed settlements.

The Furukawa Settlement Class is defined as:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, joint ventures and affiliates) that purchased Wire Harness Products in the United States directly from one or more Defendants, any current or former subsidiary, joint venture, or affiliate of any Defendant, or any alleged co-conspirator of one or more of the Defendants, during the period from January 1, 2000 through December 13, 2016.

The Mitsubishi Electric Settlement Class is defined as:

> All individuals and entities who purchased Wire Harness Products in the United States directly from one or more Defendants (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through December 13, 2016. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

For purposes of each of the Settlement Class definitions set forth above, the following entities are Defendants: Chiyoda Manufacturing Corporation; Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; G.S.W. Manufacturing, Inc.; Lear Corporation; LEONI Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.), Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

The Court has appointed Plaintiffs Paesano Connecting Systems, Inc.; Craft-Co Enterprises, Inc.; Findlay Industries, Inc.; Cesar-Scott, Inc.; Martinez Manufacturing, Inc.; South Star Corporation; and ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC to serve as "Class Representatives" for the Furukawa and Mitsubishi Electric Settlement Classes. The Court has appointed the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman Kodroff & Willis, P.C. to serve as "Settlement Class Counsel" for the Settlement Classes.

## WHAT IS THIS LITIGATION ABOUT?

Beginning in 2011, class action lawsuits were filed against Defendants by Plaintiffs, who are direct purchasers of Wire Harness Products in the United States. Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws. Plaintiffs further allege that because of the conspiracy, they and other direct purchasers of Wire Harness Products in the United States have been injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of reasonable attorneys' fees.

Each of the Settling Defendants denies Plaintiffs' allegations and has agreed to settle this matter to avoid the expense and burden of further litigation. This is a settlement with the Settling Defendants only. Plaintiffs are continuing to prosecute the case against the remaining non-settling Defendants, Denso Corporation and Denso International America, Inc.

## WHAT RELIEF DO THE PROPOSED SETTLEMENTS PROVIDE?

Plaintiffs, on behalf of the Furukawa Settlement Class, have entered into a settlement with Furukawa dated May 16, 2018, under which Furukawa has agreed to pay $19,000,000. The Settlement Agreement gives Furukawa the right to withdraw from the settlement based upon valid and timely requests for exclusion by members of the Furukawa Settlement Class. Furukawa has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

Plaintiffs, on behalf of the Mitsubishi Electric Settlement Class, have entered into a settlement with Mitsubishi Electric dated March 12, 2018, under which Mitsubishi Electric has agreed to pay $680,320. Mitsubishi Electric has also agreed to cooperate with Plaintiffs in the prosecution of the lawsuit against the remaining Defendants.

The nature and extent of the cooperation agreed to by each of the Settling Defendants is described in detail in their respective Settlement Agreements. Copies of the Agreements are on file with the Clerk of Court and available on-line at **www.AutoPartsAntitrustLitigation.com**. Each Settling Defendant has agreed to provide some forms of cooperation that are expressly agreed upon in their respective Settlement Agreements and may include: (a) the production of documents, data and other information potentially relevant to Plaintiffs' claims; (b) assistance in understanding information produced to Plaintiffs and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and the attorneys for the respective Settling Defendant who will provide information relevant to the claims in this litigation; (d) witness interviews; (e) depositions; and (f) declarations.

Settlement Class Counsel agreed to the proposed settlements to ensure a fair and reasonable resolution to this matter, and to provide benefits to the members of the Furukawa and Mitsubishi Electric Settlement Classes. The proposed settlements reflect the existence of complex, contested issues of law and fact; the risks inherent in such complex litigation; the likelihood that in the absence of settlement, future proceedings would take several years and be extremely costly; and the magnitude of the benefits resulting from the settlements in light of the possible range of recovery that could be obtained through further litigation, including the risk of no recovery. Settlement Class Counsel believe that it is in the best interests of the Settlement Classes to enter into the proposed settlements to resolve this litigation as to the Settling Defendants.

This Notice is only a summary of the terms of the proposed settlements. The Settlement Agreements contain other important provisions, including releases of certain claims against the Settling Defendants. You may examine the Agreements, which are on file with the Clerk of Court and available on-line at **www.AutoPartsAntitrustLitigation.com**, for the complete terms of the settlements. The proposed settlements must receive final approval by the Court in order to become effective.

If you are a member of the Furukawa Settlement Class or the Mitsubishi Electric Settlement Class and the proposed settlement that relates to that Settlement Class is approved and becomes effective, you will be bound by its terms, including the release provisions. If you wish to object to approval of either of the Furukawa and Mitsubishi Electric settlements you may do so, but only in accordance with the procedures set forth below. If you do not object to a settlement, you do not need to take any action at this time to indicate your support for, or lack of objection to, that settlement.

## HOW DO I REMAIN IN A SETTLEMENT CLASS AND WHAT HAPPENS IF I DO, AND HOW DO I FILE A CLAIM FORM?

You were previously asked to decide whether you wanted to remain in the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki Settlement Classes. With respect to each of those Settlement Classes, you are bound by whatever decisions you previously made.

If you are a member of the Furukawa or Mitsubishi Electric Settlement Class, you will automatically remain in that Settlement Class unless you elect to be excluded. If you wish to remain in a Settlement Class, you do not need to take any action at this time; your interests will be represented by the Class Representatives and by Settlement Class Counsel. If you remain in a Settlement Class, you will be eligible to share in the proceeds of that settlement.

If you submitted a valid Claim Form in connection with the previously approved Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo, or Yazaki settlements, you may submit a new Claim Form at this time, but you are not required to do so because the information from your original Claim Form will be used to determine the amount of your share of the Furukawa and Mitsubishi Electric Settlement Fund. If you believe you have additional information that you did not include in your previously submitted Claim Form, you may submit a Claim Form with that additional information. If you did not submit a valid Claim Form in connection with the previously approved settlements and would like to share in the proceeds of the Furukawa and Mitsubishi Electric Settlement Fund, or if you wish to submit additional information, then you must submit a Claim Form **postmarked by November 14, 2018**. Any Settlement Class member that did not previously submit a valid Claim Form and does not complete and timely submit a valid Claim Form at this time will not be entitled to share in Furukawa and Mitsubishi Electric settlement proceeds.

If you remain in either the Furukawa Settlement Class or the Mitsubishi Electric Settlement Class and the proposed settlement with that Defendant is approved and becomes effective, you will be bound by its terms, including the release provisions, whether or not you receive a share of the settlement proceeds attributable to that settlement.

## HOW WILL THE SETTLEMENT FUNDS BE DISTRIBUTED?

The Furukawa and Mitsubishi Electric Settlement Fund, with accrued interest, less any amounts approved by the Court for payment of attorneys' fees and litigation and administration costs and expenses (the "Net Furukawa and Mitsubishi Electric Settlement Fund"), will be distributed among the members of the Settlement Classes who have either (1) previously submitted a valid Claim Form in connection with the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo, and Yazaki settlements and have not elected to exclude themselves from the Furukawa and Mitsubishi Electric Settlement Classes, or (2) completed and timely submitted a valid Claim Form postmarked by November 14, 2018 and have not elected to exclude themselves from the Furukawa and Mitsubishi Electric Settlement Classes. The Net Furukawa and Mitsubishi Electric Settlement Fund will be distributed *pro rata* to all Claimants based upon their **direct** purchases in the United States from Defendants and/or any current or former subsidiary, joint venture, or affiliate of any Defendant from January 1, 2000 through December 13, 2016. The distribution will take place as soon as practicable after review, analysis, and audit of the Claim Forms by the Settlement Administrator and approval by the Court of the Settlement Administrator's recommendations as to the amounts to be paid to the Claimants.

**Please do not dispose of any document that reflects any payments for your direct purchases of Wire Harness Products in the United States from any Defendant (and/or their current or former subsidiaries, affiliates, or joint ventures) during the period from January 1, 2000 through December 13, 2016. You may need those documents to complete and substantiate your Claim Form, which will be subject to inquiry and verification.**

## WHAT IF I DO NOT WANT TO REMAIN IN A SETTLEMENT CLASS?

You may exclude yourself from either or both of the Settlement Classes. If you wish to exclude yourself from either or both of the Furukawa or Mitsubishi Electric Settlement Classes, you must send a request for exclusion, in writing, via certified mail, return receipt requested, **postmarked no later than October 5, 2018**, to Settlement Class Counsel and to counsel for the Settling Defendants, at the addresses set forth below on page 6, and to the following address:

> Wire Harness Products Direct Purchaser Antitrust Litigation
> P.O. Box 5110
> Portland, OR 97208-5110

Your request for exclusion must identify the Settlement Class or Classes from which you are seeking exclusion and must include the full name and address of the purchaser (including any predecessor or successor entities and any trade names). You are also requested to identify the Defendant(s) and/or their current or former subsidiary(ies), joint venture(s), or affiliate(s) from which you purchased Wire Harness Products during the Class Period, the Wire Harness Products you purchased, and the dollar amount of your purchases. If you validly exclude yourself from either of the Furukawa or Mitsubishi Electric Settlement Classes, you will not be bound by any decision concerning that Settlement Class, and you may pursue individually any claims you may have against that Defendant (at your own expense), but you will not be eligible to share in the settlement proceeds attributable to that Defendant.

## REQUEST FOR ATTORNEYS' FEES AND EXPENSES

The Court has appointed the law firms identified above (on page 3) as Settlement Class Counsel. These law firms, together with other firms that have worked on this litigation, will file a motion for an award of attorneys' fees and reimbursement of their costs and expenses incurred in prosecuting the case. The request of Settlement Class Counsel for attorneys' fees will not exceed one third (33 1/3 percent) of the proceeds of the Furukawa and Mitsubishi Electric Settlement Fund.

The application for attorneys' fees and litigation costs and expenses will be filed on or before September 17, 2018. If you remain in either of the Furukawa or Mitsubishi Electric Settlement Classes, and you wish to object to the requests for attorneys' fees and litigation costs and expenses, you must do so in writing in accordance with the procedures for objections set forth below. If you do not oppose any of these requests, you do not need to take any action in that regard.

## WHEN WILL THE COURT CONSIDER THESE MATTERS AND HOW CAN I TELL THE COURT WHAT I THINK?

The Court will hold a hearing on November 8, 2018, at 10:00 a.m., at the Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226, Courtroom 737 (or such other courtroom as may be assigned for the hearing), to determine whether to approve: the proposed Furukawa and Mitsubishi Electric settlements; the proposed plan of distribution of the Furukawa and Mitsubishi Electric Settlement Fund; and Settlement Class Counsel's request for an award of attorneys' fees and litigation costs and expenses from the Furukawa and Mitsubishi Electric Settlement Fund. The hearing may be rescheduled, and the courtroom assigned for the hearing may be changed, without further notice to you. Please check **www.AutoPartsAntitrustLitigation.com** for any updated information about the hearing.

If you remain a member of either the Furukawa or the Mitsubishi Electric Settlement Classes and you wish to object to that proposed settlement, or to the proposed plan of distribution of the Furukawa and Mitsubishi Settlement Fund, or to Settlement Class Counsel's request for an award of attorneys' fees and litigation costs and expenses, you must do so in writing and at your own expense. Any such objection must include the caption of this litigation, must be signed, must identify the settlement to which you object, and must be **filed no later than October 5, 2018**, with the Clerk of Court, United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226, and mailed to the following counsel, **postmarked no later than October 5, 2018:**

Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Co-Lead Counsel for the Direct Purchaser Settlement Classes*

Jack E. Pace III
John H. Chung
David H. Suggs
Demetra Frawley
WHITE & CASE
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone: (212) 819-8200

Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654
Telephone: (312) 923-2904

Larry S. Gangnes
Heidi B. Bradley
LANE POWELL PC
U.S. Bank Centre
1420 Fifth Avenue, Suite 4200
P.O. Box  91302
Seattle, WA  98111-9402
Telephone: (206) 223-7000

*Counsel for the Mitsubishi Electric Defendants*

Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
LANE POWELL PC
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone: (503) 778-2100

*Counsel for the Furukawa Defendants*

If you do not object to either of the Furukawa and Mitsubishi Electric settlements, or to any of the related matters set forth above, you do not need to appear at the hearing or take any other action at this time. **You must, however, complete and timely submit the Claim Form (if you have not already done so) if you wish to share in the distribution of the Furukawa and Mitsubishi Electric Settlement Fund.**

## WHAT SHOULD I DO IF I WANT ADDITIONAL INFORMATION OR IF MY ADDRESS CHANGES?

If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please send your correct address to:

> Wire Harness Products Direct Purchaser Antitrust Litigation
> P.O. Box 5110
> Portland, OR  97208-5110

The Settlement Agreements, Complaint, and other public documents filed in this litigation are available for review during normal business hours at the offices of the Clerk of Court, United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, Detroit, MI 48226. Copies of the Settlement Agreements and certain other documents relevant to this litigation are available at **www.AutoPartsAntitrustLitigation.com**. In addition, all documents filed in the case may be obtained through the Public Access to Court Electronic Records system, after registration and payment of the required fees. Questions concerning the proposed settlements, this Notice, or the litigation may be directed to any of the Settlement Class Counsel identified above.

**Please do not contact the Clerk of the Court or the Judge.**

Dated: August 16, 2018

BY ORDER OF:

The United States District Court for the Eastern District of Michigan, Southern Division

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **Case No. 12-md-02311**<br>**Honorable Marianne O. Battani** |
| **In Re: WIRE HARNESS CASES** | |
| **THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS** | **2:12-cv-00101-MOB-MKM** |

## CLAIM FORM

**Important Notice to Purchasers of Wire Harness Products
Please Read This Entire Document Carefully**

**TO BE ELIGIBLE TO SHARE IN THE DISTRIBUTION OF THE PROCEEDS OF SETTLEMENTS WITH THE FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS YOU MUST COMPLETE AND MAIL THIS CLAIM FORM, POSTMARKED ON OR BEFORE NOVEMBER 14, 2018, OR HAVE PREVIOUSLY SUBMITTED A VALID CLAIM FORM IN CONNECTION WITH PRIOR SETTLEMENTS IN THIS LITIGATION**

### Instructions for Completing Claim Form

If you are a direct purchaser of Wire Harness Products (and have not excluded yourself from the Furukawa and Mitsubishi Electric Settlement Classes), you may be entitled to share in the distribution of the proceeds of settlements with Defendants Furukawa Electric Co., Ltd. and American Furukawa, Inc. (collectively, "Furukawa"), and Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "Mitsubishi Electric") (the "Furukawa and Mitsubishi Electric Settlement Fund").

To receive your share of the Furukawa and Mitsubishi Electric Settlement Fund, you must either have previously submitted a valid Claim Form in connection with the prior settlements with the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo and Yazaki Defendants, or you must submit a timely and valid Claim Form in accordance with the instructions set forth herein **postmarked no later than November 14, 2018**. If you submitted a Claim Form in connection with the prior settlements you may submit a Claim Form at this time, but are not required to do so, because the information from your original Claim Form will be used to determine the amount of your distribution from the proceeds of the Furukawa and Mitsubishi Electric Settlement Fund. If you believe you have additional information that you did not include in your previously submitted Claim Form, then you may submit a Claim Form with that additional information. If you did not previously submit a Claim Form in connection with the prior settlements and would like to share in the proceeds of the Furukawa and Mitsubishi Electric settlements, then you must submit a Claim Form **postmarked by November 14, 2018**.

Please note that if you have chosen to be excluded from the Furukawa Settlement Class, you may not participate in the distribution of the portion of the Furukawa and Mitsubishi Electric Settlement Fund attributable to the Furukawa settlement, and if you chose to be excluded from the Mitsubishi Electric Settlement Class, you may not participate in the distribution of the portion of the Furukawa and Mitsubishi Electric Settlement Fund attributable to the Mitsubishi Electric settlement.

**Eligibility:** You are eligible to submit a claim seeking to share in the distribution of the Wire Harness Settlement Fund if, during the period from January 1, 2000 to December 13, 2016, you purchased one or more Wire Harness Products in the United States **directly** from one or more of the following companies and/or their current or former subsidiaries, joint ventures, or affiliates: (1) Chiyoda Manufacturing Corporation; (2) Denso Corporation; (3) Denso International America, Inc.; (4) Fujikura Ltd.; (5) Fujikura Automotive America LLC; (6) Furukawa Electric Co., Ltd.; (7) American Furukawa, Inc.; (8) Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; (9) G.S. Electech, Inc.; (10) G.S. Wiring Systems Inc.; (11) G.S.W. Manufacturing, Inc.; (12) Lear Corporation; (13) LEONI Wiring Systems, Inc.; (14) Leonische Holding Inc.; (15) Mitsubishi Electric Corporation; (16) Mitsubishi Electric US Holdings, Inc.; (17) Mitsubishi Electric Automotive America, Inc.; (18) Sumitomo Electric Industries, Ltd.; (19) Sumitomo Wiring Systems, Ltd.; (20) Sumitomo Electric Wiring Systems, Inc.; (21) K&S Wiring Systems, Inc.; (22) Sumitomo Wiring Systems (U.S.A.), Inc.; (23) Tokai Rika Co., Ltd.; (24) TRAM, Inc.; (25) Yazaki Corporation; or (26) Yazaki North America, Inc.

For purposes of each of the proposed settlements, "Wire Harnesses" are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles. "Wire Harness Products" means Wire Harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

**Submission of Claim:** Each Claim Form must be signed and Certified by you (the claimant) or a person authorized to act on your behalf, and must be **postmarked no later than November 14, 2018**, and addressed to:

> Settlement Administrator
> Wire Harness Products Direct Purchaser Antitrust Litigation
> PO Box 5110
> Portland, OR 97208-5110

Do **not** send your Claim Form to the Court or to any of the parties or their counsel. If you receive multiple copies of the Claim Form, complete only one Claim Form covering all of your qualifying purchases. Do not submit more than one claim, and do not submit duplicate claims.

**Confirmation of Receipt of Claim:** The receipt of a claim will **not** be confirmed or acknowledged automatically by the Settlement Administrator. If you wish to have confirmation that your Claim Form has been received, send it by certified mail, return receipt requested.

**Photocopies of Form:** A claim may be submitted on a photocopy of the Claim Form. Other forms, or altered versions of the Claim Form, will not be accepted. Additional copies of the Claim Form may be requested from the Settlement Administrator and also may be obtained on-line at **www.AutoPartsAntitrustLitigation.com**.

**Completion and Support of Claim:** Please type or neatly print all requested information. Failure to complete all parts of the Claim Form may result in denial of the claim, may delay processing, or may otherwise adversely affect your claim. All information submitted in a Claim Form is subject to further inquiry and verification. The Settlement Administrator may ask you to provide supporting information. Failure to provide requested information also may delay, adversely affect, or result in denial of the claim.

The Claim Form asks for certain information relating to your purchases of Wire Harness Products, as well as an explanation of the available documentation (such as account statements and extracts of books and records) that supports your claimed purchases.

**ONLY INCLUDE IN YOUR CLAIM FORM PURCHASES OF WIRE HARNESS PRODUCTS THAT YOU MADE IN THE UNITED STATES *DIRECTLY* FROM ONE OR MORE OF THE COMPANIES LISTED ABOVE UNDER THE "ELIGIBILITY" HEADING, AND/OR THEIR CURRENT OR FORMER SUBSIDIARIES, JOINT VENTURES OR AFFILIATES, DURING THE PERIOD FROM JANUARY 1, 2000 TO DECEMBER 13, 2016.**

**Claims of Separate Entities:** Each corporation, trust, or other business entity making a claim must submit its claim on a separate Claim Form.

**Taxpayer Identification Number:** A Claim Form is not complete without the federal taxpayer identification number of the claimant.

**Identity of Contact Person:** Provide the name, telephone number and e-mail address of the person to be contacted about the information in your Claim Form.

**Assistance:** If you have any questions about your claim, you may contact the Settlement Administrator at the above address. You may also contact your own attorney or other person to assist you, at your own expense.

**Keep a copy:** You should keep a copy of your completed Claim Form for your records. You should also retain all of your documents and records relating to **direct** purchases of Wire Harness Products in the United States from any of the listed companies and/or their current or former subsidiaries, joint ventures, or affiliates during the period from January 1, 2000 to December 13, 2016. As part of the claims administration process, you may be required to verify certain information about your Wire Harness Products purchases, such as which Wire Harness Products you purchased, the dollar amount(s) purchased, the date(s) of the purchases, and the company(ies) from which you directly purchased the Wire Harness Products. If verification of your purchases is sought as part of the claims administration process, you may need to submit purchase records to verify your claim.

**NOTICE REGARDING SOLICITATIONS FROM CLAIMS ASSISTANCE COMPANIES: THERE ARE COMPANIES THAT WRITE OR CALL CLASS MEMBERS AND OFFER THEIR SERVICES IN FILING CLAIM FORMS OR PROVIDING OTHER INFORMATION ABOUT POTENTIAL RECOVERY OF MONIES IN CLASS ACTIONS IN EXCHANGE FOR A PORTION OF ANY SETTLEMENT FUNDS THAT THE CLASS MEMBER MAY ULTIMATELY RECOVER. PLEASE BE ADVISED THAT THESE COMPANIES ARE NOT AFFILIATED WITH PLAINTIFFS, DEFENDANTS OR COUNSEL FOR PLAINTIFFS OR DEFENDANTS, AND YOU DO NOT NEED TO USE ONE OF THOSE COMPANIES TO ASSIST YOU OR HELP YOU IN FILING A CLAIM.**

**[CLAIM FORM STARTS NEXT PAGE]**

# CLAIM FORM

## I.  IDENTITY OF CLAIMANT

Indicate below your (the claimant's) name and mailing address. Please note: Correspondence concerning your claim will be directed to you at your mailing address. **You should notify the Settlement Administrator promptly if your address changes after you have submitted this Claim Form.**

Name:

Address:

City:                                                         State:          Zip Code:

Country:

E-mail Address:

Claimant is a (Check one):

☐ Corporation     ☐ Individual     ☐ Trustee in Bankruptcy     ☐ Partnership

☐ Other (specify, and provide the name and address of the person or entity on whose behalf you are acting):

Name:

Address:

City:                                                         State:          Zip Code:

Country:

E-mail Address:

## II.  CONTACT PERSON

Indicate below the person to be contacted regarding this claim and the person's telephone numbers and e-mail address:

Name:

Area Code     Telephone No. (Day)                          Area Code     Telephone No. (Evening)

Area Code     Fax Number

E-mail Address:

If it is different from the claimant's address stated above, provide the contact person's address:

Address:

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

City:                                                    State:        Zip Code:

**PLEASE PROMPTLY NOTIFY THE SETTLEMENT ADMINISTRATOR OF ANY CHANGE IN THE ADDRESSES AND TELEPHONE NUMBERS SET FORTH ABOVE.**

## III.   YOUR PURCHASES

On the attached Schedule of Purchases worksheet, list the total amount of **direct** purchases of Wire Harness Products in the United States from each company listed above and/or their current or former subsidiaries, joint ventures, or affiliates for each year during the period from January 1, 2000 to December 13, 2016. **The purchase amounts must be the net amounts paid after deducting any discounts, rebates, price reductions, taxes, delivery and freight charges. Purchases from companies that are not listed above should not be included.**

When records are available to allow you to calculate and document the dollar amount of your purchases, you must base your purchase information on those records. You must identify those records (e.g., invoices, purchase journals, accounts payable journals, etc.) in the Section entitled "Proof of Purchases."

When records are **not** available, you may submit purchase information based on estimates. If you do submit your purchase information based on estimates, you must explain in the Proof of Purchases section why documents are not available to you and why the estimate is reasonable. In the explanation of how you calculated the estimated purchases, you must identify the documents you used as a basis for your estimates. Estimates can be based on extrapolation from similar circumstances in analogous contexts in the same year (for which you have documentation), or extrapolation from the same or nearly the same circumstances, but in other years (for which you have documentation), or from reports of actual or estimated vehicle production and your records or estimates of the value of Wire Harness Products content per vehicle. For example, if you have no records allowing you to calculate your purchases in 2004, you may calculate those purchases by using available records, dated as close to that year as possible (e.g., 2003 or 2005), adjusting for appropriate volume differences and any inflationary unit costs. If you are using sales data and trends to estimate your purchases, you must explain your calculations and retain the documentation used for your calculations until the claims review process has been completed.

## IV.   PROOF OF PURCHASES

List and identify below those records (e.g., invoices, purchase journals, accounts payable journals, etc.) you used to calculate your claimed purchases. If you based your claim on estimates, list and identify below those records (e.g., invoices, purchase journals, sales journals, accounts payable journals, etc.) you used as the basis of your estimates, and explain how you calculated your estimated payments.

_____

_____

_____

_____

_____

_____

_____

_____

Your claim is subject to audit by the Settlement Administrator and you may, at a later time, be required to provide copies of some or all of the underlying documentation supporting your claim. Therefore, please retain your documentation until the claims review process has been completed.

## V.   CLAIMS BASED UPON ASSIGNMENT OR TRANSFER

If the claimant on whose behalf this claim is being submitted acquired from some other person or entity (as assignee, transferee, successor or otherwise) the rights that are the basis of the claim being made, please check the box below and attach copies of legal documents that support the acquisition of the claimant's claim.

☐  Yes - This claim is based upon an assignment or transfer and I have attached copies of supporting legal documents.

## VI.   EXCLUSION FROM SETTLEMENT CLASS

Identify any Settlement Class from which you excluded yourself. Specify Furukawa, Mitsubishi Electric, or both, as appropriate, or enter none.

_____

_____

## VII.   SUBSTITUTE FORM W-9

Each claimant must provide the information requested in the following box. If the correct information is not provided, a portion of any payment that the claimant may be entitled to receive from the Furukawa and Mitsubishi Electric Settlement Fund may be withheld.

**Request for Federal Taxpayer Identification Number and Certification**

Claimant's federal taxpayer identification number is:

Employer Identification Number
(for corporations, trusts, etc.)

Social Security Number
(for individuals)

☐☐ – ☐☐☐☐☐☐☐   or   ☐☐☐ – ☐☐ – ☐☐☐☐

Name of taxpayer whose identification number is written above:

First Name:                                    MI:    Last Name:

I certify that the above taxpayer is **NOT** subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the word **"NOT"** in the previous sentence.

Under penalty of perjury, I certify that the foregoing information is true and correct.

Dated: ☐☐ – ☐☐ – ☐☐
        MM      DD      YY

Signature

Print Name

Instructions regarding IRS Form W-9 are available at the Internal Revenue Service website at http://www.irs.gov.

**VIII. CERTIFICATION**

I, _____, declare under penalty of perjury that the information contained in this Claim Form is true and correct to the best of my knowledge and belief, that I am authorized to sign and submit this claim on behalf of the claimant, that the specific purchases of Wire Harness Products listed were made by the claimant **directly** from one or more of the companies listed and/or their current or former subsidiaries, joint ventures, or affiliates, that the claimant is a member of either the Furukawa or Mitsubishi Electric settlement class and has not requested exclusion from both of those settlement classes, that this claim is the only claim being submitted by the claimant, that the claimant does not know of any other claim being submitted for the same purchases, that the claimant has not transferred or assigned its claims, and that I have read the accompanying Instructions and the Notice of Proposed Settlement and Hearing. Claimant submits to the exclusive jurisdiction of the United States District Court for the Eastern District of Michigan for the purpose of investigation or discovery (if necessary) with respect to this claim and any proceeding or dispute arising out of or relating to this claim. The filing of a false claim is a violation of the criminal laws of the United States and may subject the violator to appropriate criminal penalties.

Date: _____, 2018

| |
|---|
| |

(Signature)

| |
|---|
| |

(Print your name here)

| |
|---|
| |

(Title or position [if claimant is not an individual])

**THIS CLAIM FORM MUST BE SENT TO THE FOLLOWING ADDRESS, POSTMARKED NO LATER THAN NOVEMBER 14, 2018:**

> Settlement Administrator
> Wire Harness Products Direct Purchaser Antitrust Litigation
> PO Box 5110
> Portland, OR 97208-5110

A Claim Form received by the Settlement Administrator shall be deemed to have been submitted when posted if it is mailed by **November 14, 2018**, a postmark is indicated on the envelope, and it is mailed and addressed in accordance with the above instructions. In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Settlement Administrator.

You should be aware that it will take a significant amount of time to process all of the Claim Forms and to administer the Settlement Fund. This work will be completed as promptly as time permits, given the need to review each Claim Form.

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the Claim Form on page 4.

2. Please be sure that **all** required information has been provided.

3. Your claim may be subject to review and verification by the Settlement Administrator. Accordingly, you should maintain all of the documentation supporting your claim until the claims review process has been completed.

4. Keep a copy of the completed Claim Form for your records.

5. If you desire an acknowledgment of receipt of your claim, please send it by certified mail, return receipt requested.

6. If you move after submitting your Claim Form, please promptly send the Settlement Administrator your new address.

If you have any questions concerning this Claim Form or need additional copies, contact the Settlement Administrator at: Wire Harness Products Direct Purchaser Antitrust Litigation PO Box 5110, Portland, OR 97208-5110, or at 1-877-845-2749. Copies of the Claim Form also may be obtained online at **www.AutoPartsAntitrustLitigation.com**.



## SCHEDULE OF PURCHASES

**Please fill out ONE Worksheet for EACH YEAR in which you directly purchased Wire Harness Products in the United States during the Class Period (January 1, 2000 to December 13, 2016). Enter the year of the purchases in the space provided. You may make as many copies of the blank Worksheet as necessary to list your purchases for each year. If you need more space to list your purchases for any year, please use an additional Worksheet.**

NAME OF CLAIMANT _____     YEAR _____

| Company Purchased From[1] | Products Purchased[2] | Amount Purchased[3] |
|---|---|---|
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |
| | | ($) |

**TOTAL FOR YEAR:  ($)_____**

---

[1] Identify the specific company or companies and/or their current or former subsidiaries, joint ventures or affiliates from which you directly purchased Wire Harness Products: (1) Chiyoda Manufacturing Corporation; (2) Denso Corporation; (3) Denso International America, Inc.; (4) Fujikura Ltd.; (5) Fujikura Automotive America LLC; (6) Furukawa Electric Co., Ltd.; (7) American Furukawa, Inc.; (8) Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; (9) G.S. Electech, Inc.; (10) G.S. Wiring Systems Inc.; (11) G.S.W. Manufacturing, Inc.; (12) Lear Corporation; (13) LEONI Wiring Systems, Inc.; (14) Leonische Holding Inc.; (15) Mitsubishi Electric Corporation; (16) Mitsubishi Electric US Holdings, Inc.; (17) Mitsubishi Electric Automotive America, Inc.; (18) Sumitomo Electric Industries, Ltd.; (19) Sumitomo Wiring Systems, Ltd.; (20) Sumitomo Electric Wiring Systems, Inc.; (21) K&S Wiring Systems, Inc.; (22) Sumitomo Wiring Systems (U.S.A.), Inc.; (23) Tokai Rika Co., Ltd.; (24) TRAM, Inc.; (25) Yazaki Corporation; and (26) Yazaki North America, Inc. Purchases from companies that are not listed should not be included.

[2] List the specific Wire Harness Products purchased.

[3] List the dollar amount of **direct purchases** of Wire Harness Products in the United States from each of the companies listed above for the year in question. The purchase amounts must be the net amounts paid after deducting any discounts, rebates, taxes, delivery and freight charges.

# EXHIBIT B

# CONFIRMATION OF PUBLICATION

## IN THE MATTER OF: *Auto Parts – Wire Harness*

I, Kathleen Komraus, hereby certify that

(a) I am the Media & Design Manager at Epiq Class Action & Claims Solutions, a noticing administrator, and;

(b) The Notice of which the annexed is a copy was published in the following publications on the following date:

*8.27.18 – Automotive News*
*8.27.18 – Wall Street Journal*

x _Kathleen Komraus_
   (Signature)

_Media + Design Manager_
   (Title)

CRAIN autonews.com

# Automotive News

AUGUST 27, 2018
Entire contents © 2018 Crain Communications Inc. All rights reserved.
$159/YEAR; $6/COPY

WHEN HONDA MEETS BMW

Mass-market and luxury brands are increasingly pushing their lineups into each other's territory. I PAGES 24-25 I

future product pipeline
SIXTH IN A 10-PART SERIES
Ford intends to create one of the industry's freshest lineups by dropping sedans, reviving the Ranger pickup, adding a pair of off-road utility vehicles and creating hybrid versions of its crossovers and SUVs. I PAGES 22-23 I

# California hands GM's dealer scoring another loss

## Rejection of RSI as grounds for termination follows N.Y. case

**Michael Wayland**
mwayland@crain.com

General Motors may have to reconsider the way it measures and enforces dealership sales effectiveness in the nation's largest vehicle market after a ruling that the company's system violates a state law.

California's New Motor Vehicle Board ruled Aug. 13 against GM's use of a benchmark called the retail sales index as grounds to terminate the franchise agreement of Folsom Chevrolet, a Sacramento-area dealership owned by Marshal Crossan.

The decision capped a long-running battle between Folsom and GM, which had concluded that Folsom failed to meet sales expectations and sought to revoke its franchise in late 2016.

Attorneys representing Folsom Chevrolet argued that GM's reliance on RSI was a violation because it failed to account for various market conditions, including brand preference, geography and demographics.

The decision follows a similar case in New York, where the state's highest court ruled in 2016, on

see SCORING, Page 37

# Ford aims to spread Mustang's DNA

## Lone survivor of brand's car cull takes on a bigger role

**Michael Martinez**
mdmartinez@crain.com

DETROIT — After 10 million vehicles over 54 years, the Mustang remains one of the most vital nameplates in Ford Motor Co.'s stable.

It's Exhibit A for what the Ford brand wants to stand for: bold, emotional designs that elicit passion among its customers.

The rest of its cars lack that cachet, which is why, after the Fusion sedan disappears from showrooms early next decade, the Mustang effectively will be Ford's last car standing as the brand shifts to a lineup dominated by pickups and utility vehicles.

Now, Ford is trying to re-create that Mustang magic in its crossover and SUV lineup. One vehicle in particular, a yet-to-be-named battery-electric crossover, was heavily inspired by the Mustang; Ford floated the name Mach

see MUSTANG, Page 33

An automaker with an irreplaceable CEO such as Musk is a throwback.

# Could Tesla survive without Elon Musk?

## CEO is brash and erratic, but he's a force

**Edward Niedermeyer**
eniedermeyer@crain.com

With coverage of Tesla increasingly dominated by the personality and peccadilloes of CEO Elon Musk, a question that has long lurked around the edges of discourse on the company is becoming harder to ignore: What would happen if Musk was no longer Tesla's CEO?

For many investors, Tesla without Musk is like mornings without coffee: Why bother?

"Why would you invest in Tesla without Elon Musk?" asked Ross Gerber of wealth management firm Gerber Kawasaki, a vocal Tesla supporter and investor. "It doesn't make sense."

And yet, replacing Musk has become a hot topic in the past week, following an emotional and, at times, painful-to-read interview Musk gave *The New York Times* this month. The newspaper quoted sources saying the Tesla board, concerned in part about Musk's use of sedative Ambien and recreational drugs, is searching for a new No. 2 executive to take some pressure off Musk. And that interview came after revelations that the U.S. Securities and Exchange Commission has been investigating Tesla for its disclosures around production problems and for Musk's tweet this month claiming the company had secured financing to go private.

see TESLA, Page 36

NEWSPAPER

Automotive News
RETAIL FORUM: CHICAGO
see pg. 32

# Europe fears it's losing autonomous race

## Regulators struggle to adopt rules allowing self-driving r&d

**Christiaan Hetzner**
chetzner@crain.com

The European auto industry has a fear when it comes to the advent of autonomous driving.

It's that Europe is falling behind in the new technology race, losing the competitive advantage to companies in the U.S. and China, where advanced research is occurring faster and more freely.

Johann Jungwirth, for one, is visibly frustrated.

Volkswagen Group's chief digital officer knows that automotive companies are locked in a battle with tech companies for leadership in autonomous driving.

Jungwirth, a former Apple engineer, fears European regulations are hampering efforts to bring VW's battery-powered Sedric concept to market. VW management has decided to move Sedric, short for "self-driving car," into production. But instead of in VW's home market of Germany, it will launch first in the U.S.

"My goal is to be in the first U.S. cities with driverless cars in 2021," Jungwirth said as he presented the latest iteration of the car in Hanover, Germany. After that will come a rollout in China, Singapore and in Middle Eastern cities such as Dubai. "And then comes Europe. We would love to come earlier since it's our home market, but the legislation just isn't there."

European leaders and consumers are well aware of the potential of autonomous driving. Every year, half a million metric tons of carbon dioxide emissions in Germany alone could be saved by eliminating the search for parking spaces, which studies show account for up to 30 percent of inner-city traffic. Every year 1.25 million people die around the world, and as many as 50 million are injured in road traffic accidents, according to United Nations statistics. Every year children, the elderly or the physically challenged have little or no access to individual mobility.

VW's Sedric and others like it could change that. Vehicles legally permitted to operate without any driver behind the wheel would revolutionize transportation.

But there are challenges.

### Roadblocks

Carmakers looking to test vehicles such as the Sedric in small-scale pilot operations prefer California over Europe — at least initially. Many carmakers have teams of engineers around Silicon Valley, the population is tech-savvy and open to innovation, the streets are much wider, weather conditions are usually ideal and the state government supports them.

By comparison, one major roadblock in Europe is the United Nations Economic Commission for Europe, a standards-setting body responsible for regulating the homologation and use of motor vehicles. Roughly 60 countries participate in the oversight of European traffic, and no consensus has been reached over the rollout of self-driving vehicles. Regulators are focused on more gradual innovations.

Virtually the entire continent is governed by the U.N.'s Vienna Convention on Road Traffic. This largely restricts the use of self-driving vehicles on public roads to limited testing scenarios, and legalizing their commercial operation is years from becoming reality.

"We really have a competitive disadvantage because of the UNECE," said Jungwirth, who worries that those late to the market might end up fighting over the scraps left behind. "The winner could take it all."

### No alignment

Responding to the criticism, the UNECE introduced a procedure that lets companies apply for a special exemption for a vehicle such as the Sedric. This is now subject to debate among UNECE member states, however, meaning the outcome of negotiations is uncertain and at least a four-fifths majority would need to vote in favor.

Neither the U.S. nor China has aligned its laws with European regulations on road traffic or type approval. This allows those nations to respond faster to technological advances, but also creates a patchwork of regulatory environments for carmakers.

"Progress must not stop at national borders," argued Daimler board member Renata Jungo Brüngger. "Legislation must keep up with technical progress, otherwise paramount innovations for automated and autonomous driving cannot be brought to the road."

### $65 billion

Fearing cash-rich tech companies will capitalize on their expertise in artificial intelligence and machine learning, most major carmakers are spending heavily to keep pace.

Renault unveiled its EZ-GO concept in Geneva that could form the basis for a self-driving vehicle fleet. Daimler plans to pilot a highly autonomous vehicle fleet in California in the second half of next year. Rival BMW looks to test in China and has formed a consortium around Intel and Mobileye.

All hope to bring the technology to market early next decade. Between tech and auto companies, AlixPartners estimates some $65 billion will be invested this year, up nearly tenfold from 2015.

In the lead, however, is industry pioneer Waymo, a spinoff from Google that has racked up 7 million miles of testing on public roads since it started nine years ago.

Now ready to launch its own branded mobility service starting this year in Arizona and California, Waymo is looking to branch out. With an eye toward Europe, it demonstrated its prototype Chrysler Pacifica in Italy in early June during an investor day held by industrial partner Fiat Chrysler Automobiles.

"There are differences in the regulatory and policy environment that are really important, very different from what we're facing in the U.S., but there is also an opportunity for us to experiment here in Europe," Waymo CEO John Krafcik told the Automotive News Europe Congress in Turin.

But VW may have one clear advantage as it tries to narrow Waymo's lead. Neither Waymo nor its partner, FCA, has a purpose-built self-driving vehicle on the horizon. Public acceptance of the technology is important, and the perception of security could be a key competitive advantage.

The Sedric, with its sturdy, monolithic appearance, gives occupants the feeling they are safely ensconced in a vehicle impervious to damage. Waymo, meanwhile, has to make do with a bulky laser scanner on the roof, which Krafcik says assures passengers concerns through an outward symbol of the vehicle's intelligence.

Krafcik downplayed the need for vehicles such as Sedric that need to master all situations.

"We're pretty skeptical on Level 5," he said, adding. "It will take decades and I don't even think it's necessary." Jungwirth disagrees.

"The technology is almost ready. I would love to see the legislation support us," he said. "Testing is fine, but what we need is commercial operation in order to scale up." **AN**



**Volkswagen plans to roll out its Sedric self-driving car in the U.S.**

---

LEGAL NOTICE

**IF YOU PURCHASED WIRE HARNESS PRODUCTS DIRECTLY FROM CHIYODA, DENSO, FUJIKURA, FURUKAWA, G.S. ELECTECH, LEAR, LEONI, MITSUBISHI ELECTRIC, SUMITOMO, TOKAI RIKA OR YAZAKI BETWEEN JANUARY 1, 2000 AND DECEMBER 13, 2016 YOUR LEGAL RIGHTS MAY BE AFFECTED BY PROPOSED SETTLEMENTS WITH THE FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS**

Proposed settlements totaling $19,680,320 have been reached in *In re Automotive Parts Antitrust Litigation*, Master File No.12-md-02311(E.D. Mich.), 12-cv-00101, with the Furukawa and Mitsubishi Electric Defendants (collectively, the "Settling Defendants").

**What is the lawsuit about?** This class action litigation is part of coordinated legal proceedings involving a number of parts used in motor vehicles. This case and the proposed settlements, however, relate solely to Wire Harness Products purchased **directly** from a Defendant (see below). These proceedings do not relate to, and have no effect upon, cases involving any other product or purchaser.

Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles. "Wire Harness Products," for purposes of the settlements, means wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

Direct Purchaser Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws. Plaintiffs further allege that, because of the conspiracy, they and other direct purchasers of Wire Harness Products were injured by paying more for those products than they should have paid, and seek recovery of treble damages, together with reimbursement of costs and an award of reasonable attorneys' fees.

You were previously notified of the existence of this class action, the nature of the Plaintiffs' claims, the right to object to previously approved settlements with the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo and Yazaki Defendant groups totaling $102,736,240.10, and the opportunity to submit a Claim Form.

Additional proposed settlements have been reached with the Furukawa Defendants for $19,000,000 and with the Mitsubishi Electric Defendants for $680,320. When added to the previously approved settlements, this brings the total of settlements in this case to $122,416,560.10, plus accruing interest.

Each of the Settling Defendants denies Plaintiffs' allegations and has agreed to settle this matter in order to avoid the expense and burden of further litigation. The Court has not issued any findings or rulings with respect to the merits of Plaintiffs' claims or Defendants' defenses. This is a settlement with the Settling Defendants only. The litigation is continuing against the remaining non-settling Defendants.

**Who is included?** The Court has preliminarily approved the proposed settlements and has provisionally certified Furukawa and Mitsubishi Electric Settlement Classes, which are composed of purchasers of Wire Harness Products in the United States **directly** from any Defendant and/or the current or former subsidiary, joint venture or affiliate of any Defendant during the period from January 1, 2000 through December 13, 2016 (the "Class Period").

For purposes of each of the Settlement Classes, the following entities are Defendants: Chiyoda Manufacturing Corporation; Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; G.S.W. Manufacturing, Inc.; Lear Corporation; LEONI Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.), Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

A Notice of Proposed Settlements and Claim Form ("Notice") was mailed to potential members of the Furukawa and Mitsubishi Electric Settlement Classes on or about August 16, 2018. The Notice describes the litigation and options available to Settlement Class members with respect to these settlements in more detail. If you have not received the Notice you may obtain a copy on the internet at www.AutoPartsAntitrustLitigation.com, or by calling or writing to any of the following Settlement Class Counsel:

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Eugene A. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

**What do the settlements provide?** Furukawa has agreed to pay a total of $19,000,000, and Mitsubishi Electric has agreed to pay $680,320, to settle the Class Members' claims against them (together, the "Furukawa and Mitsubishi Electric Settlement Fund"). As described in more detail in the Notice, the Furukawa Settlement is subject to rescission based upon valid and timely requests for exclusion by Settlement Class members. Each of the Settling Defendants has also agreed to provide cooperation to assist Plaintiffs in the prosecution of their claims against the remaining Defendants.

**Your rights may be affected.** If you are a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you will automatically remain a member of that Settlement Class unless you elect to be excluded. If you wish to remain in a Settlement Class, you do not need to take any action at this time; your interests will be represented by Plaintiffs and by Settlement Class Counsel. **In order to share in the Furukawa and Mitsubishi Electric Settlement Fund, however, you must either have submitted a valid Claim Form in connection with the previously approved settlements, or complete and return a copy of the Claim Form that was recently mailed to potential Settlement Class members along with the Notice, postmarked no later than November 14, 2018.**

If you wish to exclude yourself from either the Furukawa or the Mitsubishi Electric Settlement Class (or both), you must submit a written request for exclusion, **postmarked no later than October 5, 2018**, in accordance with the procedures set forth in the Notice. If you exclude yourself from either the Furukawa or the Mitsubishi Electric Settlement Class (or both), you will not be bound by any decision concerning that settlement class and you can pursue individually any claims you may have against those Defendants (at your own expense), but you will not be eligible to share in the settlement proceeds attributable to those Defendants.

If you remain a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you have the right to object to that proposed settlement, or to the proposed plan of distribution of the Furukawa and Mitsubishi Electric Settlement Fund, or to Settlement Class Counsel's request for an award of attorneys' fees and litigation costs and expenses, by following the procedures set forth in the Notice. Your objection must be **filed no later than October 5, 2018**.

The Court has scheduled a hearing on November 8, 2018, to consider whether to approve: the proposed Furukawa and Mitsubishi Electric settlements; the proposed plan of distribution of the Furukawa and Mitsubishi Electric Settlement Fund; and Plaintiffs' counsel's requests for an award of attorneys' fees and litigation costs and expenses from the Furukawa and Mitsubishi Electric Settlement Fund. The hearing may be rescheduled, and the courtroom assigned for the hearing may be changed, without further notice to you.

If you believe you are a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you are urged to obtain a copy of the Notice, which discusses your rights regarding the settlements and related matters.

If you have questions concerning this litigation, you may contact any one of the Settlement Class Counsel identified above. **Do not contact the Clerk of the Court or the Judge.**

Dated: August 27, 2018

BY ORDER OF:
The United States District Court for the Eastern District of Michigan, Southern Division

# S.C., Utility Battle Over Nuclear Plant

Completion costs weigh on dispute as industry competes against renewables

By Mengqi Sun



Lawmakers and South Carolina Electric & Gas Co. are fighting over the costs to complete the Virgil C. Summer power plant.

The primary owner of a power plant with two partially built nuclear reactors in South Carolina walked away from the $9 billion project last summer because of high construction costs and delays. Now no one wants to pay for it.

The utility overseeing the Virgil C. Summer plant is asking ratepayers across the Palmetto State to shoulder its construction expenses of $4.7 billion, citing a law passed last decade. But local lawmakers are trying to force South Carolina Electric & Gas Co. to pick up more of the tab.

A federal judge handed lawmakers an initial victory earlier this month, ruling that a temporary state-imposed rate cut for customers could stand. The utility, known by its acronym SCE&G, is appealing the decision.

This dust-up is part of a larger U.S. dispute over how much public support should be provided to support nuclear power at a time when the industry is struggling to compete with lower-cost natural gas and renewable energy.

The South Carolina plant and a similar project in Georgia both encountered massive cost overruns that led to the bankruptcy of nuclear project builder Westinghouse Electric Co.

The company that owns the Georgia plant, which like the South Carolina project also received state support, said earlier this month that it would take an earnings charge to cover more than $1 billion in new cost overruns.

"What is happening in South Carolina is reflective of how challenging the economics of nuclear power are across the country," said Jason Bordoff, a Columbia University professor who was senior director for energy and climate change for the National Security Council.

Existing plants across the U.S. are also struggling, prompting new calls for public assistance to keep them from closing. New York, New Jersey and Illinois are putting up public money to refurbish old plants or allowing utilities to charge rate payers for fixes, citing nuclear power as an important source of clean energy.

Other states with power plants, like Ohio and Pennsylvania, have thus far resisted those efforts. Some in those states argue that the power companies should be left to fail or succeed on their own.

The same debate is unfolding in Washington, D.C. The Trump administration is proposing a new plan to bail out failing nuclear and coal-fired plants, arguing that grid reliability is a national security issue.

A decade ago the subject of public assistance for nuclear power was considerably less controversial. In South Carolina the expansion of the existing V.C. Summer Nuclear Station was initially billed as a source of job creation, a producer of lower emissions and a cheap solution to surging energy demand in the coming decades. The partners were SCE&G and a state-owned utility, Santee Cooper.

SCE&G benefited from a new financing arrangement granted by the state legislature that diverged from how big power projects had been paid for in the past. The utilities would have approval to charge rate payers as the project was built.

"We didn't have near enough skepticism," said South Carolina Republican state Sen. Greg Gregory, one of the sponsors of that legislation.

Since 2007 SCE&G has increased the rate charged customers by 18%, according to a spokesman for SCE&G parent Scana Corp. That translates to about $27 a month for residential ratepayers, the spokesman said. Since 2009, it collected about $2 billion to cover interest costs on its project-related debt, the spokesman said.

One resident affected by the increases was Doris Fletcher, 78 years old, who has a utility bill of $100 to $150 a month. That accounts for 18% of her monthly expenses, she said.

"I get upset with what they have done to us and other people," said Ms. Fletcher, who lives in West Columbia, S.C. "Because there [are] a lot of people on fixed income besides me."

South Carolina lawmakers started considering a law to temporarily walk back the rates after an audit of the project highlighting cost overruns and delays became public last September. The temporary rate cut went into effect earlier this month, giving SCE&G's customers an average monthly reduction of $22 in their power bill until December.

South Carolina Gov. Henry McMaster, a Republican, said he wanted the rates to be even lower. "It is unacceptable, irresponsible, and unconscionable for any South Carolinian to pay another dime" for the abandoned project, the governor said in a letter to state House members.

SCE&G sued the state to stop the rate cut but a federal judge said it could stand. A state commission that regulates utility rates will set a permanent rate in December.

---

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

LEGAL NOTICE

**IF YOU PURCHASED WIRE HARNESS PRODUCTS DIRECTLY FROM CHIYODA, DENSO, FUJIKURA, FURUKAWA, G.S. ELECTECH, LEAR, LEONI, MITSUBISHI ELECTRIC, SUMITOMO, TOKAI RIKA OR YAZAKI BETWEEN JANUARY 1, 2000 AND DECEMBER 13, 2016 YOUR LEGAL RIGHTS MAY BE AFFECTED BY PROPOSED SETTLEMENTS WITH THE FURUKAWA AND MITSUBISHI ELECTRIC DEFENDANTS**

Proposed settlements totaling $19,680,320 have been reached in *In re Automotive Parts Antitrust Litigation*, Master File No.12-md-02311(E.D. Mich.), 12-cv-00101, with the Furukawa and Mitsubishi Electric Defendants (collectively, the "Settling Defendants").

**What is the lawsuit about?** This class action litigation is part of coordinated legal proceedings involving a number of parts used in motor vehicles. This case and the proposed settlements, however, relate solely to Wire Harness Products purchased directly from a Defendant (as defined below). These proceedings do not relate to, and have no effect upon, cases involving any other product or purchaser.

Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles. "Wire Harness Products," for purposes of the settlements, means wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies used in motor vehicles.

Direct Purchaser Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Wire Harness Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products, in violation of federal antitrust laws. Plaintiffs further allege that, because of the conspiracy, they and other direct purchasers of Wire Harness Products were injured by paying more for those products than they should have paid, and seek recovery of treble damages, together with reimbursement of costs and an award of reasonable attorneys' fees.

You were previously notified of the existence of this class action, the nature of the Plaintiffs' claims, the eight previously approved settlements with the Lear, G.S. Electech, Tokai Rika, Chiyoda, Fujikura, LEONI, Sumitomo and Yazaki Defendant groups totaling $102,736,240.10, and the opportunity to submit a Claim Form.

Additional proposed settlements have been reached with the Furukawa Defendants for $19,000,000 and with the Mitsubishi Electric Defendants for $680,320. When added to the previously approved settlements, this brings the total of settlements in this case to $122,416,560.10, plus accruing interest.

Each of the Settling Defendants denies Plaintiffs' allegations and has agreed to settle this matter in order to avoid the expense and burden of further litigation. The Court has not issued any findings or rulings with respect to the merits of Plaintiffs' claims or Defendants' defenses. This is a settlement with the Settling Defendants only. The litigation is continuing against the remaining non-settling Defendants.

**Who is included?** The Court has preliminarily approved the proposed settlements and has provisionally certified Furukawa and Mitsubishi Electric Settlement Classes, which are composed of purchasers of Wire Harness Products in the United States **directly** from any Defendant and/or the current or former subsidiary, joint venture or affiliate of any Defendant during the period from January 1, 2000 through December 13, 2016 (the "Class Period").

For purposes of each of the Settlement Classes, the following entities are Defendants: Chiyoda Manufacturing Corporation; Denso Corporation; Denso International America, Inc.; Fujikura Ltd.; Fujikura Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; Furukawa Wiring Systems America, Inc. (f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; G.S.W. Manufacturing, Inc.; Lear Corporation; LEONI Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.), Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

A Notice of Proposed Settlements and Claim Form ("Notice") was mailed to potential members of the Furukawa and Mitsubishi Electric Settlement Classes on or about August 16, 2018. The Notice describes the litigation and options available to Settlement Class members with respect to these settlements in more detail. If you have not received the Notice you may obtain a copy on the internet at www.AutoPartsAntitrustLitigation.com, or by calling or writing to any of the following Settlement Class Counsel:

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700

Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Eugene A. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

**What do the settlements provide?** Furukawa has agreed to pay a total of $19,000,000, and Mitsubishi Electric has agreed to pay $680,320, to settle the Class Members' claims against them (together, the "Furukawa and Mitsubishi Electric Settlement Fund"). As described in more detail in the Notice, the Furukawa Settlement is subject to rescission based upon valid and timely requests for exclusion by Settlement Class members. Each of the Settling Defendants has also agreed to provide cooperation to assist Plaintiffs in the prosecution of their claims against the remaining Defendants.

**Your rights may be affected.** If you are a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you will automatically remain a member of that Settlement Class unless you elect to be excluded. If you wish to remain in a Settlement Class, you do not need to take any action at this time; your interests will be represented by Plaintiffs and by Settlement Class Counsel. **In order to share in the Furukawa and Mitsubishi Electric Settlement Fund, however, you must either have submitted a valid Claim Form in connection with the previously approved settlements, or complete and return a copy of the Claim Form that was recently mailed to potential Settlement Class members along with the Notice, postmarked no later than November 14, 2018.**

If you wish to exclude yourself from either the Furukawa or the Mitsubishi Electric Settlement Class (or both), you must submit a written request for exclusion, **postmarked no later than October 5, 2018**, in accordance with the procedures set forth in the Notice. If you validly exclude yourself from either the Furukawa or the Mitsubishi Electric Settlement Class (or both), you will not be bound by any decision concerning that settlement class and you can pursue individually any claims you may have against those Defendants (at your own expense), but you will not be eligible to share in the settlement proceeds attributable to those Defendants.

If you remain a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you have the right to object to that proposed settlement, or to the proposed plan of distribution of the Furukawa and Mitsubishi Electric Settlement Fund, or to Settlement Class Counsel's request for an award of attorneys' fees and litigation costs and expenses, by following the procedures set forth in the Notice. Your objection must be **filed no later than October 5, 2018**.

The Court has scheduled a hearing on November 8, 2018, to consider whether to approve: the proposed Furukawa and Mitsubishi Electric settlements; the proposed plan of distribution of the Furukawa and Mitsubishi Electric Settlement Fund; and Plaintiffs' counsel's requests for an award of attorneys' fees and litigation costs and expenses from the Furukawa and Mitsubishi Electric Settlement Fund. The hearing may be rescheduled, and the courtroom assigned for the hearing may be changed, without further notice to you.

If you believe you are a member of either the Furukawa or the Mitsubishi Electric Settlement Class, you are urged to obtain a copy of the Notice, which discusses your rights regarding the settlements and related matters.

If you have questions concerning this litigation, you may contact any one of the Settlement Class Counsel identified above. **Do not contact the Clerk of the Court or the Judge.**

Dated: August 27, 2018

BY ORDER OF:
The United States District Court for the Eastern
District of Michigan, Southern Division

### NOTICE OF SALE

**NOTICE OF DISPOSITION OF COLLATERAL**

UMB Bank, National Association ("Collateral Agent"), as collateral agent for lenders Pine River Master Fund Ltd. and Pine River Fixed Income Master Fund Ltd. (collectively, "Lenders"), hereby gives notice that Amur Finance IV LLC ("Debtor") has committed events of default under various agreements including (a) a Secured Revolving Credit Agreement, dated as of August 5, 2013 (as amended, the "Credit Agreement"), executed by Debtor, Lenders, and the other parties thereto, and (b) a Security Agreement dated August 5, 2013 executed by Debtor, Lenders, and the other parties thereto (the "Security Agreement"). Collectively, the Credit Agreement and the Security Agreement, including amendments and modifications, together with certain related documentation, are referred to as the "Loan Documents" hereinafter.

NOTICE IS HEREBY GIVEN that Collateral Agent will, in accordance with its rights under the Loan Documents and in accordance with Section 9-610 of the Uniform Commercial Code, hold one or more public sales, in bulk or in parcels, of a portion of the personal property of Debtor in which Collateral Agent has a security interest as described in the Loan Documents (the "Collateral"). The Collateral that will be sold in connection with this Notice is referred to as the "Subject Collateral" hereinafter.

The Subject Collateral consists of the loan from Amur Finance IV LLC to Amur Equipment Finance, Inc. as evidenced by, among other things: (a) a Secured Revolving Credit Agreement dated as of March 31, 2014, by and among Amur Finance IV LLC, Amur Equipment Finance IV LLC, as Lender, and Amur Finance Company, Inc., as Administrative Agent; (b) a security interest in the face amount of $40,000,000, dated March 31, 2014, executed by Axis Capital, Inc., and payable to the order of Amur Finance IV LLC; (c) a Security Agreement dated as of March 31, 2014, executed by Axis Capital, Inc., Axis Capital Insurance, LLC, and Amur Finance Company, Inc., as Grantor, and Amur Finance IV LLC, as Lender; (d) a Guaranty dated as of March 31, 2014, executed by each of Axis Capital West, LLC and Key Financial, Inc.; and (e) a Borrowing Notice in April 2015 represented by that certain Note (collectively referred to herein as evidencing $10 million Advance). The loan is in the original principal amount of approximately $50,000,000.00, accrues interest at a rate tied to LIBOR (as more fully described in the above-referenced documents), and matures on July 25, 2019.

Some or all of the Subject Collateral will be sold by Collateral Agent at one or more public sales (to be held on or after 10:00 a.m. on August 29, 2018, at the New York City offices of Shepard Mullin Richter & Hampton LLP, located at 30 Rockefeller Plaza, New York City, New York 10112.

THE SALE OF THE SUBJECT COLLATERAL WILL BE "AS-IS", "WHERE-IS", "WITH ALL FAULTS", WITHOUT EXPRESS OR IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, QUALITY OR FITNESS OR ANY OTHER EXPRESS OR IMPLIED WARRANTIES.

ALL RIGHTS OF COLLATERAL AGENT AND LENDERS ARE EXPRESSLY RESERVED, INCLUDING ALL RIGHTS WITH RESPECT TO COLLATERAL IN WHICH COLLATERAL AGENT HAS A SECURITY INTEREST BUT WHICH IS NOT SUBJECT TO THIS NOTICE.

Persons interested in attending the sale and bidding for the Subject Collateral may obtain additional information by contacting Collateral Agent at UMB Bank, National Association, 120 South 6th Street, Suite 1400, Minneapolis, MN 55402, Attention: Mr. Gavin Wilkinson, gavin.wilkinson@umb.com, (612) 337-7001.

---

THE WALL STREET JOURNAL.

## THE MARKETPLACE

ADVERTISE TODAY

(800) 366-3975
wsj.com/classifieds

© 2018 Dow Jones & Company, Inc.
All Rights Reserved.

## Fast, Easy Home Security

Continued from page B1

The standard home-security starter kit includes a motion detector and one or a few sensors, which trip when two magnetic pieces are pulled apart by the opening of a door or a window. A base station controls the whole system, which you arm or disarm using a keypad, touch screen or your phone.

Nest and Ring rely on your phone to set up the system: You scan codes on the sensors, connect everything to Wi-Fi, then mount (or stick) things in their assigned places. I had both up and running in five minutes. SimpliSafe was just as easy, but it uses a battery-powered keypad instead of your phone. The SmartThings setup required some software updates and a little more time, but even it worked in less than 20 minutes.

Once it's set up, your alarm exists in one of three states. When it's off, it's off. When it's set to Home, it monitors doors and windows but won't worry about your motion inside. When you flip it to Away, the alarm gives you a minute or so to get out and then watches for any disturbance at all. All systems can be armed from the devices themselves, and all but SimpliSafe work from your phone by default. (SimpliSafe lets you control your system remotely if you pay for the $25-a-month monitoring plan.)

Whenever something triggers the sensors, the system sends an alert to your phone. You'll also get alerts if the base station is unplugged, at which point an internal battery kicks in. If something trips the system and nobody enters the disarming code in time, a built-in alarm wails. For an extra monthly fee, you can pair your DIY alarm system with always-on professional monitoring. Ring and SimpliSafe offer their own services, while Nest and SmartThings use brand-name security companies (Brinks and ADT, respectively).

No matter which system you use, the monitors can call you to make sure you're OK after the alarm goes off, and even alert the police.

The difference between these and the security systems you're used to? No professional installation required, no hidden fees and no contracts. You can have the pros watch while you're on vacation, then cancel forever.

Nest wins with personalization: It comes with two NFC (near-field communication) keychains you can assign to family members, so you know who got home and tapped the alarm to shut it up. SimpliSafe has similar tags, sold separately.

SimpliSafe's best unique feature is Secret Alerts, which can ping your phone but keep the base station silent. It's like a superhightech version of putting a piece of tape on the door to see if the teenagers were sneaking out.

The SmartThings system works as a hub for a universe of smart-home devices: You can manage home security from the same app you would use to control your lights, TV and robot vacuum.

In all, the Ring Alarm ended up closest to what I've been looking for. Ring sells the least costly hardware, offers the cheapest monitoring and has the features I want at the moment. If at some point I would prefer a more expansive system, I would hit Ring's limits pretty quickly.

For now, I have what I need: an easy way to know my apartment is still standing. I still don't know what the dog's up to, though. The crafty little guy's too short to set off the motion detectors.

The $400 Nest Secure kit has a motion detector in the base station; tap it with the NFC keychain tag to turn off the alarm.

